IN ERROR.

ALBANY,
Nov. 1822.

HADDEN
v.
SPADER.

---

LOT HADDEN, impleaded with JOHN DAVIS, *Appellant,*
*against*
WILLIAM SPADER, BENJAMIN HAIGHT, HALSTED E. HAIGHT, UNDERHILL HALSTEAD, EZEKIEL HALSTEAD, JOHN GREA-CEN, HENRY TROWBRIDGE, JONATHAN JEWETT, and JAMES N. CODWISE, *Respondents.*

The Court of Chancery has power to assist a judgment and execution creditor, to dis-cover and reach the pro-perty of his debtor, in who-soever hands it has been placed, out of the reach of an execution at law.

And a judg-ment creditor who has sued out execution at law, which has been re-turned *nulla bona,* acquires a priority of right to the property or

APPEAL from the Court of Chancery. The respon-dents, on the 25th of *January,* 1820, filed their bill, stating, that *John Davis,* of the city of *New-York,* merchant, being largely indebted to them, and others, stopped payment on the 26th of *June,* 1819, and refused to pay any of his creditors. That being possessed of a large stock in trade, and having debts due to him to a large amount, he, for the purpose of defrauding his creditors, combined with the appellant, *Had-den,* to conceal the property, so as to retain it for his own use, and delivered the same to the appellant, who still re-tained the same, or the proceeds thereof, with a view of con-cealing or disposing thereof, to prevent the same from being levied on by execution on any judgment which might be ob-tained against *John Davis.* That the respondents have ob-tained judgments, and issued writs of *fieri facias* against

trust moneys of the debtor, in the hands of his trustee, which cannot be affected or impaired by any subsequent assignment by the debtor, for the benefit of all his creditors generally, or for the benefit of a particular creditor; and any payments made by the trustee of the debtor, after a bill filed by the execution creditor, or after notice of this equitable right, are of no avail against such creditor.

And it makes no difference whether the property of the debtor consists in *choses in action, money,* or *stock;* for the Court can compel the debtor, or his trustee, to pay it over to the cre-ditor; and can direct a transfer and sale of the *stock* for the benefit of the creditor.

*Davis*, on which the Sheriff had returned *nulla bona*. The bill prayed a discovery; and that the assignment to *H.*, the appellant, might be declared void, and that all the goods and chattels of *Davis*, in the hands of the appellant, might be submitted to the operation of the executions, for the benefit of the respondents, and for the payment of the demands of such other of the *bona fide* creditors of *Davis* as should come in and contribute to the expenses of the suit; and that the appellant, and *Davis*, might account, &c., and for general relief, &c.

The answers of *Hadden* and *Davis*, admitted the insolvency of *Davis*, who stopped payment on the 26th of *June*, 1819, and was indebted as stated in the bill. They stated, that *Davis* then owed *Hadden* a confidential debt of 2,386 dollars and 40 cents, which *D.* then paid in goods, at cost. That, on the same day, *D.* assigned to the appellant all the residue of his goods, stock in trade, &c., in trust, &c., with a proviso, that the assignment should be void, unless all the creditors of *D.* should sign the same, and release him from all their demands, upon receiving their several proportions under the said assignment, within thirty days from the date. That the creditors refused to release *D.* within that time, and the assignment became void after the expiration of the thirty days. That in consequence thereof, *D.*, on the 29th of *July*, 1819, made a second assignment to the appellant, described in a schedule annexed, in trust for certain creditors named in another schedule annexed to the assignment; that by that assignment the appellant was to convert all the property into cash, and to offer five shillings in the pound to such of the creditors as should release *D.*; that the appellant, accordingly, on the 18th of *August*, 1819, sold all the property, at auction, for 1,486 dollars and 17 cents; and that the said creditors refused to accede to the terms offered; and the appellant held the proceeds of the sales made under the assignment, in trust for *D.*; and that when the second assignment became void, the appellant had in his hands 2,207 dollars and 17 cents, belonging to *Davis*, including the proceeds of the sale of the goods, and 721 dollars and 10 cents, assigned to him, in like manner. That the appellant had paid to *D.* various sums from that fund, and

IN ERROR.
........
ALBANY,
Nov. 1822.

HADDEN
v.
SPADER.

had a balance remaining in his hands, at the time of filing this answer, of 799 dollars and 33 cents, belonging to *Davis*. They denied that there was any collusion or fraudulent combination between them, to delay or defraud the creditors of *D.*, or to hinder the goods from being levied upon by execution. There was a general replication to the answers. The cause was heard and decided in the Court of Chancery upon the bill and answers, without taking any proof in the cause. The Chancellor declared, that the plaintiffs, at the time of filing their bill, had acquired, as execution creditors at law, a priority of right, valid in equity, to the trust moneys belonging to *D.*, in the hands of the appellant *H.*; and that all payments of the same by *H.* to *D.*, subsequent to the filing of the bill, containing notice of that right, and of their claim in pursuance of it, were made in his own wrong; and he considered the doctrine in the cases of *Brinckerhoff* v. *Brown*, and *M'Dermutt* v. *Strong*, (4 *Johns. Ch. Rep.* 671. 687.) as applying and governing the case. He, accordingly, decreed, that "the defendants, or one of them, within thirty days, pay to the solicitor of the plaintiffs the 974 dollars and 72 cents, with interest from the 29th of *January*, 1820, and the costs of the suit, or that execution issue, &c., and that the same, when received, be paid to the plaintiffs, rateably in proportion to the amount of their judgment." From this decree the defendants below appealed to this Court.

The CHANCELLOR assigned the reasons for his decree, as above stated; and see S. C. 5 *Johns. Ch. Rep.* 280.

*Isaac Hamilton*, for the appellant, contended, 1. That the cause having been submitted on the bill and answers, and the answers denying all fraud, the conduct of the appellant must be considered *bona fide*.

SPENCER, Ch. J. The decree of the Chancellor does not proceed on that ground.

*Hamilton.* The question then comes to this; whether a creditor can call on the creditor of his debtor, and recover

moneys belonging to the debtor, out of his hands. But, to enable a creditor to do this, he must show that he has an *existing lien.* To constitute such a *lien,* there must be, not merely the suing out of an execution, but some *act* done under the execution, amounting to a *levy* on the property. (*Haggerty* v. *Wilbur,* 16 *Johns. Rep.* 287. *Hendrick* v. *Robinson,* 2 *Johns. Ch. Rep.* 283. 312, 313.) All diligence on the part of the Sheriff, is denied by the answers; and there is no evidence of a levy, or of any attempt to levy on the property, so as to entitle the judgment creditors to the aid of a Court of equity. Nor does it appear, from the pleadings, that the respondents, or any of them, were the oldest judgment creditors, or that they have sued out execution and filed their bill before any other judgment creditor. (*McDermutt* v. *Strong,* 4 *Johns. Ch. Rep.* 691.)

SPENCER, Ch. J., We shall not intend there is any elder judgment; as that has not been alleged in the answers.

*Hamilton.* The fact, that there are no prior judgment creditors, ought expressly and affirmatively to appear from the plaintiff's own showing. But the goods of *Davis,* having been assigned and turned into cash, before the respondents obtained judgment, the executions were no *lien,* at law, on the surplus cash, or resulting interest of the assignor, in the hands of the appellant. It had become a mere chose in action; and *choses in action,* or stock, not being liable to creditors, cannot be levied on, or reached by execution, in law or equity. (2 *Johns. Ch. Rep.* 312. *Dundas* v. *Dutens,* 1 *Vesey,* jr. 196. *Nantes* v. *Corrock,* 9 *Vesey,* 189. *Caillaud* v. *Estwick,* 2 *Anst. Rep.* 381. 4 *Johns. Ch. Rep.* 692. *Wilks* v. *Ferris,* 5 *Johns. Rep.* 335. *Bogert* v. *Perry,* 17 *Johns. Rep.* 351.) In *Angel* v. *Draper,* (1 *Vernon,* 399.) the case rests on the ground of fraud. The cases cited by the Chancellor, in *Brinckerhoff* v. *Brown,* from 1 *P. Wms.* 445. 3 *Atk.* 192. 739. and 8 *East,* 467., are clearly distinguishable from the present. They merely show, that an execution creditor was allowed to redeem a chattel. The cases in 6 *Vesey,* 788. 1 *Equ. Cases Abr.* 232. 2 *Dick.* 575. decide only, that a judgment creditor

IN ERROR.
.......
ALBANY,
Nov. 1822.

HADDEN
v.
SPADER.

IN ERROR.

ALBANY,
Nov. 1822.

HADDEN
. v.
SPADER.

may go into a Court of equity for discovery.    In *M'Der-mutt* v. *Strong*, (4 *Johns. Ch. Rep.* 687.) the plaintiff's execution had been actually levied on ships, by which he had acquired a right to redeem them from the previous lien. *Bayard* v. *Hoffman*, (4 *Johns. Ch. Rep.* 450.) was a case of a *voluntary settlement* of all the property of an insolvent, including stock, which was held to be void under the statute of frauds.    The Chancellor cites 9 *Vesey*, 189. and 10 *Vesey*, 368. as containing repeated *dicta* of Lord *Eldon*, that Chancery cannot give execution against stock, *eo nomine*, upon which there is no lien.    The result of all the cases is, that *money*, put into the hands of another, conditionally, cannot be reached by the process of a Court of law or of equity. (*Rob. Fraud. Conv.* 421, 422.)    The Supreme Court, in *Handy* v. *Dobbin*, (12 *Johns. Rep.* 220.) said, that money, in the actual possession of a defendant himself, might be taken on an execution against him ; but, not the money of the defendant, in the hands of a *third* person.  (1 *Cranch*, 133.   4 *East*, 510.   9 *East*, 48.   5 *Bos. & Pull.* 376.)

SPENCER, Ch. J.    The respondents admit, that they cannot touch the money by an execution at law ; and it is on that ground that they filed their bill in chancery.

*G. Griffin*, contra, said, it would not be denied, that according to the plainest principles of justice and equity, every person ought to pay his honest debts ; and if he is unwilling, the law ought to compel him to do so ; but if Courts of law, from any defect of power, are unable to afford an adequate remedy for that purpose, relief must be found in the Court of Chancery.    That equity will give relief in such a case, was fully established by the authorities.  (2 *Johns. Ch. Rep.* 283. 296.  1 *Vernon*, 399.  1 *P. Wms.* 445.  2 *Atk.* 477. 3 *Atk.* 192. 739.  2 *Vesey*, 51.  4 *Vesey*, jr. 651.  *Mitf. Pl.* 101, 102.   *Coop. Equ. Pl.* 148, 149.)   It is, therefore, necessary merely to answer the objections which have been raised by the counsel on the other side.

It is said, that there has been no *levy*.    The respondents filed their bill on the very ground, that they could not

IN ERROR.
........
ALBANY,
Nov. 1822.

HADDEN
v.
SPADER.

make a levy. Had they been able to have levied on the property, they would have pursued the highway of the common law. But it is enough to lay a foundation for their claim to the interference of a Court of equity, that they have a judgment, and have used legal diligence, by issuing an execution, which has been returned *nulla bona*, because the defendant had placed his property beyond its reach.

Again, it is said, there may be other and prior judgments ; but there is no evidence of the fact ; and a solemn decree of the Court of Chancery, is not to be reversed on a mere conjecture. It has been decided, that money may be taken in execution. (12 *Johns. Rep.* 220. 395. 1 *Cranch*, 133.) Is money, then, properly speaking, a *chose in action?* The difficulty, as to levying on the money here, does not arise from the nature of the subject to be levied upon, but from the situation in which it has been placed by the debtor. But, admitting, that money is a *chose in action*, is this Court prepared to say, that the mighty mass of property existing under that appellation, is not to be subjected to the payment of debts? The first case in which the question appears to have been raised in *England*, was that of *Taylor* v. *Jones*, in 1743. (2 *Atk.* 600.) A settlement was decreed void as to creditors, before and after the marriage, and the trust estate, which consisted of *stock*, was ordered to be sold, and applied for the payment of debts. The case of *King* v. *Dupine*, mentioned in a note to that case, (3 *Atk.* 603.) was in 1744, and Lord *Hardwicke* decreed, that the *reversion* of four exchequer annuities, to which the defendant was entitled, should be assigned to the plaintiff, a judgment creditor, who had filed a bill, praying to have them sold for the payment of her debt. In *Horn* v. *Horn*, (*Ambl. Rep.* 79.) decided in 1749, the plaintiff, a judgment creditor, who had issued an execution, which was returned *nulla bona*, finding that the defendant had public stock, standing in the names of trustees, filed a bill to have it made subject to the payment of her debt. It is true, Lord *Hardwicke* dismissed the bill, because the plaintiff, after it was filed, issued a *ca. sa.* on her judgment, on which the defendant was arrested and held in custody ; yet, if no *ca. sa.* had been taken out, the bill would undoubtedly have been sustained ; for though Lord

IN ERROR.
•••••••
ALBANY,
Nov. 1822.

HADDEN
v.
SPADER.

*Hardwicke* expressed no opinion on that point; yet, the reporter adds a *nota bene,* that the bill, had it not been for the *ca. sa.* would have been held proper to subject the stock in the hands of the trustees. The case of *Patridge* v. *Gopp,* (*Ambler,* 596. 1 *Eden,* 163.) in 1758, supports the same doctrine. Thus stood the *English* law prior to *April,* 1775, and, according to the constitution, became the law of the state. We have no privileged species of property, any more than a privileged order of men. The principle of our law, as well as its policy, is to subject all the property of a debtor to the payment of his debts. But what has been the law of *England* since the period of our independence ? In *Dundas* v. *Dutens,* decided in 1790, (1 *Vesey,* 196.) Lord *Thurlow* first expresses a doubt, as to the power of the Court to reach *stock* standing in the name of the party, unless there was a *lien* upon it. This was after the system of *English* bankrupt laws had been established, when it became less necessary to maintain the general power of the Court over this species of property. In *Scott* v. *Scholey,* (8 *East,* 467.) Lord *Ellenborough* was of opinion, that an execution creditor might have a decree in equity for the sale of a mortgage term for years, or a mere equitable interest, to satisfy his debt. We may then place Lord *E.* with Lord *Northington,* and Lord *Hardwicke,* in the scale against the doubts of Lord *Thurlow,* Lord *Eldon,* and Lord *Manners.* But it is enough for the respondents, that the law, as it stood in 1775, is in their favour. The consequences of the doctrine contended for by the other side, are obvious. A debtor may possess millions of property, in stock, bonds, or money ; may riot in luxury, and set his creditors at defiance.

PLATT, J. Is there not a sufficient remedy under the ninth section of the insolvent act; or, if the person of the debtor cannot be reached, under the absent and absconding debtor act ?

*Griffin.* The remedy afforded by that section of the statute, though it appears powerful on paper, has been found wholly ineffectual in practice.

Again, the appellant paid over the money to *Davis* four

months after the respondents filed their bill, which was a sufficient notice. (*Jackson* v. *Dickenson*, 15 *Johns. Rep.* 309.)

IN ERROR.
........
ALBANY,
Nov. 1822.
HADDEN
v.
SPADER.

*T. A. Emmet*, in reply, said, it was certainly a principle of strict morality, that a man should pay his honest debts ; but this was, in some degree, a duty of imperfect obligation. The positions, however, of the counsel for the respondents, that the law would compel the unwilling debtor ; and if the remedy at law was defective, a Court of equity would afford an adequate remedy for that purpose, were neither of them wholly true, nor wholly false. The law does afford a remedy to a certain extent; and if defective, it is for the legislature, not a Court of Chancery, to supply the defect. In *England*, the legislature have interposed, and passed bankrupt laws, which reach merchants and traders. Our legislature has gone further, and extended its aid against debtors of every description, who, after being arrested on a *ca. sa.*, do not, within sixty days, pay the demands against them ; and subjects all their property, real and personal, including choses in action, to the payment of their debts. There appears, therefore, to be no urgent necessity for Courts to stretch the law, to meet a supposed evil in a particular case.

Did Lord *Thurlow*, in 1790, say, that he was making a new law, or that he declared the old law ? We contend, that the cases cited for the respondents never were the law of *England*, or of this state. The money received by the appellant, in this case, was, in no sense, a trust. *Hadden* held as a *debtor* of *Davis*. The assignment to him became absolutely void, in consequence of the creditors not complying with conditions on which it was made.

There are two classes of cases in which Courts of equity have interfered in aid of a creditor ; 1. In order to compel a discovery of assets, tangible by execution at law ; 2. To remove an impediment created by equity ; and all that is allowed in this class of cases, was to let in the judgment creditor to redeem the equitable incumbrance, and thereby remove the impediment. The case of *Brinckerhoff* v. *Brown*, belongs to the first class ; that of *M'Dermutt* v. *Strong*, to

IN ERROR.
.......

ALBANY,
Nov. 1822.

HADDEN
v.
SPADER.

the second. In *Bayard* v. *Hoffman*, (4 *Johns. Ch. Rep.* 450.) the Chancellor has very ably discussed the principle, though he did not make it the ground of his decision, in that case. The cases of *Taylor* v. *Jones, Horne* v. *Horne, King* v. *Dupine*, and *Patridge* v. *Gopp*, which have been relied upon by the other side, have been shaken, if not overruled, by numerous subsequent decisions ; and are considered by all the elementary writers as overruled. (*Rob. on Fraud. Conv.* 421, 422. *Atherl. on Fam. Settl.* 221, 222.) The opinions of Lord *Eldon*, in *Dundas* v. *Dutens*, (1 *Vesey*, jr. 196.) *Nantes* v. *Corrock*, (9 *Ves.* 189.) *Rider* v. *Kidder*, (10 *Vesey*, 368.) are not mere *dicta*, but decisions on this point.(2 *Cox*, 239, 240. *Simmons* v. *Kinnard*, 4 *Vesey*, 735— 745.) In *Caillaud* v. *Estwick*, (2 *Anst.* 381.) the counsel, *arguendo*, cite the case of *Dundas* v. *Dutens*, as decided by Lord *Thurlow ;* and Chief Baron *M'Donald* said, he remembered applying, in behalf of the crown, to have the assistance of equity, in aid of an extent, to get at stock in the funds, and it was refused. In *M'Cartry* v. *Goold*, (1 *Ball & Beatty's Rep.* 387.) Lord *Manners* expressly decides this point, that *choses in action*, or stock, could not be reached by the Court of Chancery. And in *Brinckerhoff* v. *Brown*, the Chancellor recognises this doctrine. He says, " if a creditor seeks aid as to real estate, he must show a judgment creating a *lien* upon such estate ; if he seeks aid in respect to personal estate, he must show an execution giving him a *legal preference or lien* upon the chattels."

WOODWORTH, J. It would be matter of surprise, as well as regret, if, in a system of jurisprudence, that has been matured by the wisdom of ages, adequate remedies were not provided for the violation of every important civil right. Although this consideration will have no influence in deciding on a case, where the power of the Court to redress an alleged wrong is drawn in question, it may, nevertheless, be useful in calling for the most careful and strict examination, before the point is conceded, that there is no efficient remedy. The rules and maxims of a Court of Chancery are as fixed as those which govern inferior jurisdictions. To break in upon these rules, because the Court may deem

it expedient and salutary, would justly excite alarm, and
be the source of incalculable evils. Every man of intelli-
gence knows too well the value of stability and uniformity
in judicial decisions, to countenance, for a moment, any
indirect attempt, under the semblance of resisting a parti-
cular mischief, to invade or encroach on the legislative
power. To determine, in every case, the precise boundary,
may be a difficult and delicate task. Such a conflict, how-
ever, cannot be of frequent occurrence, because, the gene-
ral powers of Courts are defined with sufficient accuracy,
to guard against an excess of jurisdiction. On the argu-
ment, the power and authority of the Court of Chancery to
grant the relief, which has given rise to this appeal, was
strongly contested. It is not pretended, that a Court of
common law possesses adequate powers. The subject in
controversy, has been withdrawn beyond the reach of its
process.

A Court of equity is the only tribunal, whose proceed-
ings can reach the property of a debtor in the hands of his
trustee; for I shall subsequently endeavour to show, that
the remedy, under the act giving relief in cases of insolven-
cy, is ineffectual and illusory, and may be evaded by every
fraudulent debtor.

It is laid down as an undeniable proposition, that the ju-
risdiction of a Court of equity will be exercised, when the
principles of law, by which the ordinary Courts are guided,
give a right; but the powers of those Courts are not suffi-
cient to afford a complete remedy, or their modes of pro-
ceeding are inadequate to the purpose. (*Mitf. Pl.* 103.)
Hence, a system of jurisprudence has grown up, adapted
to afford a remedy for injuries not cognizable in other
Courts. These principles are fixed and certain; but, as
Lord *Redesdale* observes, in *Bond* v. *Hopkins*, (1 *Sch. &
Lef.* 420.) "they decide new cases as they arise, by the
principles on which former cases have been decided, and
may thus illustrate or enlarge the operation of those princi-
ples." And, again; "nothing is better settled in Courts of
equity, than that, where a title exists at law, and in con-
science, and the effectual assertion of it at law is unconsci-
entiously obstructed, relief should be given in equity; and

IN ERROR.
. . . . . . .
ALBANY,
Nov. 1822.

HADDEN
v.
SPADER.

that, when a title exists in conscience, though there be none at law, relief should, also, though in a different mode, be given in equity."

In cases of trust and fraud, Mr. *Maddock* observes, ( 1 *Madd. Ch.* 8.) Courts of equity seem unwilling to set bounds to their jurisdiction, and say how far they will go ; evidently, because fraud and trusts are peculiarly of chancery jurisdiction, and consequently its powers ought to be so exercised, that no subtilty or cunning shall be able to prevent the detection of fraud, or cause the failure of justice ; that a trustee, while acting fairly and honestly, shall be sure of the protection of the Court, but never be permitted to become the instrument of wrong.

The case now before the Court, raises this question ; whether a debtor, who has placed his funds in the hands of a trustee, where they cannot be reached by an execution at law, can put his creditor at defiance, and enjoy the benefit of those funds, which ought to be appropriated to the payment of his debts ? The injustice and immorality of such a course will not be doubted ; but it is urged, that the powers of the Court cannot rightfully be carried so far as to correct the mischief ; and if they could, the application of the rule would be attended with great and serious inconvenience. If, in truth, no case could be found, where relief had been applied for, or granted, on facts similar to those before us, that result would, by no means, establish the doctrine contended for ; the inquiry would still be, do not the great and comprehensive powers of the Court of Chancery, in relation to fraud and trusts, necessarily confer the right to come in aid of a Court of law, by compelling the trustee to pay over to the creditor, the funds on which he has no claim, nor any right to withhold ? It will be recollected, that *Hadden*, the trustee, admits the amount of money in his hands belonging to *Davis*, at the time the bill was filed, and when his appearance was entered. His honour, the Chancellor, has decreed the payment of that sum, to be distributed rateably among the respondents, in proportion to the amount due on their respective judgments. If Courts of equity, in *England*, have acted upon this principle, it will greatly fortify and support the inference I have drawn

from the general powers of the Court; and, although it IN ERROR.
........
ALBANY,
Nov. 1822.
HADDEN
v.
SPADER. may appear that the doctrine has been questioned in some modern decisions, they cannot be regarded as authority. When they are opposed to cases adjudged prior to our revolution, it must be kept in mind, that the law, as settled by English adjudications, at the time we adopted the common law, cannot be departed from, until those adjudications are clearly shown to be erroneous.     The earliest case I have met with, is that of *Angel* v. *Draper*, (1 *Vernon*, 399.) decided in 1686 ; the plaintiff had obtained judgment at law, and then filed his bill, alleging, that the defendant, upon pretence of a debt due to himself, and to prevent the plaintiff's having the benefit of his judgment, had got goods of the defendant, of great value, into his hands, and prayed an account and discovery; the defendant demurred, because the plaintiff had not alleged that he had sued out a *fi. fa.* ; for, until he had so done, the goods were not bound by the judgment, nor the plaintiff entitled to a discovery or account.     The Court allowed the demurrer, on the ground, that the plaintiff ought to have sued out execution before he brought his bill.     It does not distinctly appear, whether the goods remained unsold, so that the execution would have been a lien at law, or whether they had been converted into money ; and, therefore, the case does not fully come up to the one under consideration.     It may, however, be inferred, that the Chancellor denied the relief, on the ground, that no execution had issued, without inquiring whether it could have been a lien or not ; making the relief to depend on a condition precedent, to wit, that the plaintiff had done all that was practicable at law ; this would have appeared, had a *fi. fa.* been sued out, and returned *nulla bona.*   I am the more inclined to believe this was the principle of the decision, because, on that ground, it seems to present a case for equity jurisdiction ; the powers of a Court of law not being sufficient to afford a complete remedy.

In *Balch* v. *Wastall*, (1 *P. Wms.* 445.) decided in 1718, *Vernon*, of counsel for plaintiff, cited a case where Lord *Nottingham* held, that one who had a judgment, and had lodged a *fieri facias* in the hands of the Sheriff, to which *nulla bona* was returned, might, afterwards, bring a bill

IN ERROR.
.......
ALBANY,
Nov. 1822.

HADDEN
v.
SPADER.

against the defendant, or any other, to discover any of the goods or personal estate, and, by that means, to affect the same ; but he must first go as far as he could at law, by delivering the writ of *fi. fa.* and getting it returned.

The case of *Taylor* v. *Jones,* 2 *Atk.* 600. (1743) decides, that property not tangible by a *fi. fa.* will be reached by a Court of equity. The bill was filed by simple contract creditors, to compel the payment of their debts out of stock vested in trustees, for the benefit of the defendant for life, of his wife, for life, and afterwards for the benefit of his children. The settlement was held fraudulent and void, and the Master of the Rolls decreed the stock to be sold and applied to the creditors. If rightly decided, this case disposes of the objection, that money in the hands of a trustee, cannot be subjected to the respondents' demand ; for if stock could be sold, and the money applied, it follows, that goods converted into money can claim no exemption. This case is important to show that the nature of the property sought to be recovered, interposes no formidable barrier; and for this purpose it is an authority. The counsel for the appellant contended, that the principle of this decision had been overruled in all the cases, and cited 3 *Atk.* 192. and 4 *Johns. Ch. Rep.* 671. So far as it sanctions the right of a simple contract creditor to file his bill, at once, without showing an execution, to give him a legal preference, which he has pursued to every available extent at law, the objection may be well founded ; for I do not find in the report, that any execution had been issued, or even a judgment entered. It is silent on this point. The Master of the Rolls speaks of an agreement, "that if the plaintiffs would allow the defendant two years to pay his debts, he would give a warrant of attorney to confess a judgment ; and then observes, that whether the creditors had any specific lien is not material ; for as soon as the judgment was entered, it would have been a specific lien." Now, whether any judgment was entered on the warrant of attorney, is not asserted ; but if there had been a judgment, the Master of the Rolls observes, that would have been a specific lien. This position, it is admitted, cannot be supported ; for a judgment is no lien on stock in the name of a trustee. But it is not necessary to sanction

IN ERROR.

ALBANY,
Nov. 1822.

HADDEN
v.
SPADER.

the principle, that simple contract creditors can, in the first instance, without recourse to a court of law, reach property of this description, by bill in equity : for here an execution has been returned *nulla bona.* With this concession, still the case of *Taylor* v. *Jones* remains an authority, that stock vested in trustees may be directed to be sold and applied to the payment of debts. In *Horne* v. *Horne,* (*Ambler,* 79.) decided in 1749, the plaintiff had judgment at law, and execution returned ; he then filed his bill to have satisfaction out of stock in the name of trustees. After filing the bill, the defendant was arrested on a *ca. sa.* The bill was dismissed ; Lord *Hardwicke* observing, " that at law the body taken on *ca. sa.* is a satisfaction ; you cannot afterwards take his goods." Without reference to the note of the reporter, who says, that if the plaintiff had not taken out a *ca. sa.,* the bill had been proper to subject the stock in the hands of the trustees, I think it manifest, from the language of Lord *Hardwicke,* that the only objection was the *ca. sa.* ; if that had not existed, it seems to be treated as a plain case for relief. It may also be inferred, that although a *fi. fa.* is necessary, it is not indispensable, to show a lien at law, but that the party had proceeded as far as he could before he came into equity. A *fi. fa.* can create no lien on stock in the hands of a trustee. For that purpose, it is useless ; but it is a prerequisite, to enable equity to afford the relief which justice so clearly demands.

The case of *Partridge* v. *Gopp,* in 1758, (*Ambler,* 596.) is also much in point ; it decided, that money in the hands of a donee might be reached. The gift was declared fraudulent within the 13th *Elizabeth.* The doctrine laid down was, " that no man has such a power over his own property, to dispose of it so as to defeat his creditors, unless for consideration." Neither in the argument of counsel, or the opinion of the Lord Keeper, is there a difficulty suggested, that equity could not reach property of this description ; the objections to the relief were on other grounds. In *Scott* v. *Scholy,* (8 *East,* 435.) it was held, that a mere equitable interest could not be taken on a *fi. fa.* But Lord *Ellenborough* observed, there was a remedy to be applied in another Court, upon a bill to be filed by the judgment creditor.

IN ERROR.
.......
ALBANY,
Nov. 1822.

HADDEN
v.
SPADER.

In the case now before us, it will be recollected, that the respondents obtained judgment against *Davis*, and issued writs of *fi. fa.*, on which the Sheriff returned *nulla bona*. It was not necessary to prove what steps were taken by the Sheriff to discover property, because, the return is proof, that all reasonable diligence was used, according to the established rule, that, until the contrary appears, the officer is presumed to have done his duty. (19 *Johns. Rep.* 345.) It follows, then, that the judgment creditor must go into equity to obtain possession of the equitable interest of his debtor. I cannot too much approve the justice and morality of the rule, laid down by his honour the Chancellor in *M'Dermutt* v. *Strong*, (4 *Johns. Ch. Rep.* 690.) " that if the creditor has taken, and exhausted all the means in his power at law, he will be entitled to the aid of a Court of Chancery, to discover and apply the property to satisfy his execution." The preceding cases have, by late adjudications in *England*, been questioned and overruled ; but it is for this Court to decide how far they are satisfactory, and justify a departure from the ancient landmarks of the law. Whatever may be the result, I think I am warranted in saying, that on one side we find a rule frequently acted upon, and never drawn in question, as far as I have discovered, for nearly a century, supported by its manifest equity, and, as I apprehend, shown to be within the power and jurisdiction of the Court ; on the other hand, a new rule, to be regarded so far as it shall appear to be correctly laid down, but not to be followed on the ground of binding authority. I am well convinced, that the doctrine recognised by the Chancellor's decree, was the law of the land on the 19th of *April*, 1775, and that its operation will be salutary in its consequences. Had not the new doctrine emanated from so highly respectable a source, I should very much incline to consider it an innovation.

In *Dundas* v. *Dutens*, (1 *Vesey*, jr. 196.) the bill prayed, that certain stock might be sold, and the proceeds applied to satisfy creditors. Lord *Thurlow* does not profess to discuss the subject, but puts a question, " is there any case where a man, having stock in his own name, has been sued for the purpose of having it applied to satisfy creditors ?

IN ERROR.
........
ALBANY,
Nov. 1822.

HADDEN
v.
SPADER.

Those things, such as stock, debts, &c. being choses in action, are not liable; they could not be taken on a *levari facias.*" The whole of this is a *dictum.* If I have rightly understood the former cases, it does not appear to be indispensably necessary, that the property might be taken on execution; but the broad principle is supported, that stock may be reached in equity, where the plaintiff has pursued his remedy, as far as he can, at law; and in some of the cases, it had been reached by simple contract creditors.

In *Caillaud* v. *Estwick,* (1 *Anst.* 381.) a bill was filed to assist a judgment creditor of Lord *Abingdon,* who had assigned his life estate in a lease, in trust, to receive the rents and profits, and pay a moiety to certain creditors, and the other moiety to Lord *A.* The Court of Exchequer refused to assist the creditor, to reach the share reserved to Lord *A.* The ground of that decision seems to be, that as stock in the funds, or in the hands of a trustee, cannot be taken on a *fi. fa.* so neither could they be taken by any process out of equity. It is evident, the Court proceeded on the ground taken by Lord *Thurlow,* to which I have referred. So, also, in 9 *Vesey,* 189. and 10 *Vesey,* 368. there are dicta of Lord *Eldon,* that Chancery does not give execution against stock, *eo nomine,* upon which there is no lien, and that it has no jurisdiction in aid of the infirmity of the law; Lord *Thurlow,* in *Dundas* v. *Dutens,* is referred to. As to all these late adjudications, differing from Lord *Hardwicke,* there is no examination of the old cases, no reasoning to show that the old rule was inconvenient or mischievous, no authorities cited in opposition. Lord *Thurlow* first questions the doctrine; and if a *dictum* can overthrow it, I admit it has been done. The subsequent cases have followed the same rule, and however correct those decisions may have been, we are not favoured with any reasoning or authority in their support.

The result of this examination is, that the decree of his honour the Chancellor is warranted by the established principles which govern in a Court of equity. In the course of the argument something was said as to the inconvenience of this rule in practice. If property not tangible by an execution, is placed in the hands of a trustee, is there any

hardship in requiring him to pay it to the creditor, instead of the *cestui que trust* ?

If the transaction is a fair one, and not fraudulent, the Court will protect the rights of the trustee, so that he sustain no loss. If he is liable, by the terms of his trust, to pay the money in his hands on demand, no injustice is done, if the same is enforced by the decree of a Court. If he holds the trust property, and is to restore it in a given time, the Court will not disregard the terms of his liability, but protect him in all his just rights : while they cause justice to be done to the creditor, they will not impose on the trustee any additional responsibility. If he is necessarily subjected to costs, the fund in his hands will be applied for his indemnity ; if he is sued at law by the debtor, while the creditor calls on him in Chancery, and he thereby becomes exposed to a double recovery, he may protect himself by bill of interpleader. Whatever expenses are necessarily incurred in his defence would form a proper item for allowance, out of the fund committed to his charge. If the property consists of *choses in action,* the principle here decided, will equally reach them, by compelling the debtors to pay to the creditors suing for relief. If the property sought to be reached consists of *stock,* cannot the Court direct a transfer and sale, for the benefit of creditors ? The principle now to be settled goes to that extent, and may be executed without oppression or material inconvenience. The doctrine is calculated to lessen the temptation to fraud, when it is seen that a Court of equity is armed with legitimate power, not only to detect fraud in its most secret recesses, but to wrest from the dishonest debtor his property, not liable to execution, in whosoever hands it may be placed. But it has been urged, that it is not necessary for a Court of Chancery to exercise this power, as the creditor may obtain relief by proceeding under the insolvent act. If an effectual remedy could be had under that act, it does not affect the present question ; it proves that there is a concurrent remedy ; but that remedy is not effectual, as I shall briefly endeavour to show.

By the act to amend the act for giving relief in cases of insolvency, (sess. 40. ch. 55.,) if a debtor has been imprisoned

for sixty days on execution, any creditor whose debt is not less than 25 dollars, may apply to a Judge for an order, that the creditors show cause on a certain day, why an assignment of the debtor's property should not be made. If, on the day appointed, the debtor delivers an account of his creditors, and his estate, and two thirds of the creditors join in the request, and the debtor assigns his property, he may be discharged; but if two thirds of the creditors do not request, he cannot be discharged, and no assignment can be directed. It will be seen how very inadequate is the remedy, derived from this statute; no proceeding can be instituted until sixty days after the debtor is confined; then eight weeks are allowed to show cause; during this period the debtor may call in his trust property, and convert it into money, or place it in the hands of some secret trustee, and refuse to render any account. Assignees may, at length, be appointed, after the fraudulent debtor has had sufficient time to place his property out of their reach. As soon as the debtor becomes apprized that his creditor is about to proceed under this act, he can withdraw his funds from the hands of his trustee, and that trustee may, with entire safety, pay to the debtor, or to whomsoever he appoints. In Chancery, (1 *Johns. Ch. Rep.* 566.) after filing the bill, and service of subpœna, the trustee would be affected by notice; if he parted with the trust property it would be at his peril. The emendatory act has somewhat improved the system in relation to cases of insolvency, but has no pretensions to be considered as giving an effectual remedy to reach the debtor's property; and even that remedy is liable to be defeated, unless two thirds of the creditors agree to act in concert. Having, as I conceive, shown the unquestionable jurisdiction of the Court, on general principles, as well as by the authority of adjudged cases, and that a failure of justice would follow the abandonment of the plain path before us, I have no hesitation in saying, the decree of his honour the Chancellor, ought to be affirmed.

PLATT, J. The *gravamen* of the bill is, that *Davis* and *Hadden* conspired to defraud the creditors of *Davis*, by

placing the goods of *Davis* under cover, so as to screen them from execution, and to enable *Davis* to enjoy and control the property, in defiance of his creditors. I do not understand, (as was assumed by the counsel for the appellant,) that the Chancellor has proceeded on the broad ground, that the Court of Chancery has jurisdiction to reach all the *choses in action* of the debtor, so as to subject them to execution, or render them thus available to creditors. The question is not, whether the appellant, *Hadden*, was indebted to *Davis*, and, therefore, bound to respond to the creditors of *Davis*; but whether *Hadden* has been guilty of an actual, or constructive fraud, in aiding *Davis* to conceal and dispose of his property, to the injury of *Davis's* creditors? If he voluntarily lent himself for such purpose, and has ministered to fraud, I am unwilling to admit, that a Court of equity is incompetent to afford relief.

The appellant, in his answer, expressly " denies, that there ever was any fraudulent combination between him and *Davis*, to delay or defraud the respondents in any wise whatsoever." But, in the same answer, he admits a series of facts, from which both law and equity impute fraud. He admits, that he consented to take an assignment from an insolvent debtor, not only in payment of his own debt, (which he had a right to do,) but of all the residue of his goods; that he agreed to convert them into money, and to hold it for the benefit, and subject to the control of the debtor, after offering to the creditors a composition of five shillings in the pound, which they rejected; that he sold those goods at auction for 1,486 dollars and 17 cents; that he had paid part of that money to the debtor, and held the residue subject to his order.

Now, after detailing these facts, it is in vain for the appellant to swear that there was no fraud in the transaction. There is no ground to charge him with perjury; but he judged incorrectly, in drawing the conclusion from his own premises. It is like an answer, admitting that the defendant exacted ten per cent. per annum, for the loan of money, but denying that the contract was corrupt or usurious. It

IN ERROR.
........

ALBANY,
Nov. 1822.

HADDEN
v.
SPADER.

is the office of a Court of Chancery to instruct and guide the consciences of such men.

The Supreme Court of this state gave an exposition of the statute of frauds, in the case of *Hyslop & Campbell v. Clarke*, (14 *Johns. Rep.* 458.) upon a state of facts very similar to the case now before us. It was an action of trespass, for taking goods in possession of the plaintiff; and the defendant justified under a *fi. fa.* in his favour against *Wilbur & Barnet*. The plaintiffs gave in evidence an assignment to them by *Wilbur & Barnet*, of the goods in question, *in trust*, to convert them into money ; and, out of the avails, *first*, to satisfy a debt due to *Hyslop & Co. ; second*, to pay all the other creditors proportionally, on condition of their executing releases of their respective demands ; and in case the creditors, or any of them, should refuse to give such releases, then the trustees were directed not to execute that trust ; *third*, in case of such refusal of the creditors, *or any of them*, to give such discharge, then in trust, (after paying the debt to *Hyslop & Co.*) to pay the whole of the avails of the property to such of the creditors as the debtors (the assignors) should appoint ; *fourth*, to pay the *overplus*, in any event, to the debtors themselves ; and the Court held, that although a debtor may lawfully prefer one of his creditors to another, yet that this was an attempt to keep the property in the power of the debtors, to enable them to give such preference at a future period, and to compel their creditors to acquiesce in the terms offered them ; that the assignment, as regarded the *other creditors*, was void by the statute of frauds ; and that *part* being illegal and void, the whole must be void ; and that the assignment could not be used by *Hyslop & Co.* to protect the property in their hands, against the executions of other creditors ; and there was judgment accordingly for the defendant.

The case now before us, is still stronger against the appellant, because this assignment is not coupled with *any valid trust*, such as the payment of his own debt out of that fund ; the confidential debt due to him having been satisfied, independent of the assignment of the *residue* of the goods. His being a general creditor for 500 dollars, was

IN ERROR.
.......
ALBANY,
Nov. 1822.

HADDEN
v.
SPADER.

not sufficient to support the general assignment. He had a right, if he chose, to accept five shillings in the pound for his own debt of 500 dollars; but that was clearly not the object of this assignment. It was intended as an instrument of coercion against his refractory creditors. Suppose the goods covered by this assignment had remained *unsold* in the hands of the appellant, when the Sheriff received the *fi. fa.* against *Davis*, can there be a doubt that they would have been liable to such execution? We must shut our eyes, not to see, that the real understanding and intention between *Davis* and his assignee, were, to place the property out of the reach of the creditors, and to keep them at bay; at least such was the direct tendency and effect. Here was property liable in itself to execution against the debtor, which the appellant agreed to take into his possession, and to cover with his name, and thereby screen it from such execution. Is it possible, that such a scheme may be practised with impunity and success? If sanctioned by this Court, it would, in a great measure, destroy the remedy by *fieri facias*, for the collection of debts; it would be *optional* with every debtor, to submit to such compulsory sale, or to assign his property in trust to a friend, and thereby secure it for the benefit of himself and his family. The remedy by *ca. sa.* is so expensive, and generally so lax and *ineffectual*, that it has become little more than *nominal*; and is sinking into disuse. It is, therefore, highly important, that the remedy by *fieri facias* should be vigorously and efficaciously maintained.

If the assignment is to be deemed *fraudulent*, the creditors are, in my judgment, as much entitled to the *avails* of the goods, if sold, as they would be to levy on them by execution in the hands of the assignee. If the simple act of converting them into money, would afford protection to all who were concerned in the fraud, an immediate sale would always follow such an assignment, and justice would be eluded. The jurisdiction of chancery is *suppletory*, and in aid of the common law process; and, if confined to cases of fraudulent assignments, I perceive nothing dangerous or alarming, in the exercise of such a power; on the contra-

ry, it seems wise and salutary, in giving full and fair effect to the writ of *fieri facias.*

On examining the cases and authorities cited on the argument, there appears such a contrariety of decisions and *dicta,* in the *English* Courts, on the point before us, that I feel at liberty to decide it upon sound principles of justice and public policy, as a case of first impression. The reason, probably, why this point has remained unsettled, and has, indeed, received so little attention in the *English* Courts, is, that they have a bankrupt law, which affords an easier and more summary remedy, than by bill in Chancery; and the fact, that we are destitute of such a law, renders it essential to the due administration of justice, that we should sustain the jurisdiction exercised by the Chancellor in this case. But I am not prepared to extend this doctrine to any other cases than those, wherein the trustee received goods *liable in themselves to execution,* under circumstances which imply fraud, in fact, or in law, as against creditors. In an abstract view, it may appear proper to extend the remedy in favour of creditors, to every *chose in action* of the debtor. But, in my judgment, such power has not yet been conferred on our Courts of justice; and it will be the appropriate office of a bankrupt law, or some other legislative provision, to afford such a remedy. I feel that we are treading on new ground, and I am unwilling to commit myself beyond the case now before us.

My opinion is, that this decretal order ought to be affirmed.

SPENCER, Ch. J. said, that he was of opinion that the decree ought to be affirmed, on the principles and authorities stated in the opinion delivered by Mr. Justice *Woodworth,* in which he fully concurred.

This being the opinion of a majority of the Court,\* the following decree was thereupon entered : " Counsel having been heard in this cause, and deliberation being thereupon had, and a majority of the Court concurring in the opinion delivered by Mr. Justice WOODWORTH, It is ORDERED, ADJUDGED, and DECREED, that the decree of the Court of

<div style="margin-notes">

IN ERROR.
. . . . . . .
ALBANY,
Nov. 1822.

HADDEN
v.
SPADER.

\* *Nov. 12th.*
*For affirming* 20. *For reversing* 8.

</div>

IN ERROR.

ALBANY,
Nov. 1822.

Chancery, in this cause, be affirmed, and that the appeal be dismissed; and that the appellant pay to the respondents their costs in defending this appeal, to be taxed, and that the record be remitted to the Court of Chancery, to the end that this decree may be carried into execution."

Decree of affirmance.