**J. A. J.** CRESWELL and others *vs.* ABRAM SMITH and
another.

## October Term, 1875.

JURISDICTION OF CHANCERY AFTER JUDGMENT TO SUBJECT PERSONAL EFFECTS
IN THE HANDS OF THE DEBTOR.—The court of chancery has no power,
without the aid of a statute, at the instance of a judgment creditor who has
exhausted his legal remedy, to institute an inquisition into the circumstances
of the defendant, and to compel him, under the penalty of imprisonment,
to turn over to a receiver government bonds or personal chattels in his
possession, in order to subject them to the satisfaction of the judgment; and
no such statutory authority has been conferred upon the court in this state.

*John Ruhm,* for complainants.
No appearance for defendants.

THE CHANCELLOR:—The case comes before me upon a
motion made by the complainants for the appointment of a
receiver.

The bill was filed on the 16th of July, 1875, by the com-
plainants, as judgment creditors of the defendant Smith,
after exhausting their remedy at law by a return of *nulla
bona,* to reach, for the satisfaction of their debt, six bonds
of the United States for $1,000 each, and a gold watch,
which, the bill alleges, are his property, and have been
deposited with a person whose name is unknown to com-
plainants, and cannot be ascertained upon diligent enquiry.
The allegation of the bill is that the defendant Smith, in his
return of his property, made a few days before for purposes
of taxation, reported the bonds and watch as his property;
that complainants "are further informed, and so charge, that
defendant Smith is concealing the said bonds and watch with
the fraudulent purpose of hindering, delaying, and defeat-
ing his creditors, and especially complainants, and prevent-
ing them from being levied on by the sheriff; that he is
concealing his property, and has deposited it with a person
whose name is unknown to complainants, and which, upon
diligent enquiry, cannot be ascertained, but that said
unknown person is a resident of Davidson county, and is

aiding said Smith in concealing his said bonds and watch, and preventing the sheriff from levying the said writ of *fieri facias* thereon." That the sheriff has an *alias* writ of *fieri facias* in his hands tested of the first Monday of May, 1875, which is a lien upon said bonds and watch, and that the sheriff reports that Smith is possessed of some property, but is concealing it so that it cannot be reached. The bill prays that Smith be served with process, and the unknown defendant by publication. That Smith be required to disclose in his answer the name of said unknown defendant, where said bonds and watch are, and what stocks, bonds, or other property he is possessed of, and where they are. That the defendant be enjoined from selling, exchanging, trading, removing, or otherwise disposing of said bonds and watch, or of any property which he, or his unknown co-defendant, may discover to be his; that a receiver be appointed to take charge of said property; that a lien be declared in favor of complainants thereon, and the same be subjected to the satisfaction of complainants' judgment, etc.

No answers have been filed to this bill, nor has it been taken for confessed. The motion made is for a receiver, and, if appointed, for instructions to him by the court as to his duties.

The bill, as originally presented to me, was against the defendant Smith alone, and upon it I refused to grant any fiat. The present bill was then framed, upon which, with some hesitation, I granted a fiat for the injunction, as prayed. Under the circumstances the complainants seemed to me entitled to the injunction temporarily, and to the opportunity of presenting the questions involved fairly to the court in term time. The case is now before me upon such formal presentation, supplemented by an able oral and written argument of the learned counsel for the complainants. The defendants have put in no appearance.

The Code, § 4283, provides thus: "The creditor whose execution has been returned unsatisfied, in whole or in part, may file a bill in chancery against the defendant in the

27

execution, and any other person or corporation, to compel the discovery of any property, including stocks, choses in action, or money due to such defendant, or held in trust for him, except when the trust has been created by, or the property so held has proceeded from, some person other than the defendant himself, and the trust is declared by will duly recorded, or deed duly registered."

Section 4284 is: "The court has power to compel the discovery, and to prevent the transfer, payment, or delivery of the property, and to subject the same to the satisfaction of the judgment or decree, whether such property could, if in the defendant's possession or with the title vested in him, be levied upon by execution or not."

The original act from which these provisions are taken was passed on the 18th of October, 1832, and, since its passage, it has been a matter of every-day occurrence for judgment creditors, upon a return of *nulla bona*, to come into this court, by bill filed against the defendant in the execution, and a third person or corporation, to compel the discovery of property due to, or held in trust for, such defendant, and to subject the same to the satisfaction of the judgment. I am not aware that any such bill has ever been filed against the defendant in the execution alone, nor against such defendant and a person unknown. The question is entirely a new one, so far as my own information and research, or the information and research of the learned and industrious counsel of the complainants, will enable me to speak.

The application for an injunction upon a bill filed against the defendant Smith alone having been refused, the amendment by making an unknown party a defendant is, probably, a plan resorted to for the purpose of meeting the suggestion that such a bill would not lie against the defendant alone. It is obvious that, if such an allegation would answer the purpose intended, without being based upon alleged facts from which the court can see that it is well founded, the objection to a bill against the defendant alone

would amount to nothing, If the charge of collusion with an unknown party will give the court jurisdiction to compel discovery, not merely from that party, but from the judgment debtor, it might as well be held at once that the bill will lie against the latter alone. And, if such a charge will not enable the court to compel a discovery from the debtor, but only from the unknown party, the bill would be a useless farce.

But the complainants are mistaken in supposing that a bill lies against unknown parties at all, unless there is tangible property upon which to base jurisdiction, or unless the unknown party is capable of being identified by description. A bill against the unknown owners of specific property over which the court has jurisdiction for a specific purpose, or the unknown heirs of a certain individual, where these heirs are necessary parties to enable the court to exercise acknowledged jurisdiction, is provided for by law; for publication, in such a case, is directed to an individual sufficiently identified, and, *ex necessitate*, the presumption that he receives notice is not too violent. But where the court has no control of property, and no means of identifying an unknown party, publication would have nothing to rest on, and would be simply nugatory. If, in this case, the bonds mentioned in the bill had been seen to drop from the pocket of a man who immediately ran off, and had been picked up by a policeman, the complainants, if satisfied that they were the property of the defendant Smith, might impound them in the hands of the policeman, and might divest the title of the unknown possessor by averments identifying him as the man who dropped them, and that, upon diligent enquiry, his name and residence could not be ascertained. So, too, if the complainants were able to charge in their bill that a person was seen to snatch certain bonds from the hands of the defendant Smith, and run off with them, these facts might sufficiently identify him to make publication effective. The allegation of this bill is not sufficient. Code, § 4311, subsec. 4.

The counsel for the complainants insists that this bill is maintainable against the defendant Smith alone, and refers to the decisions of the courts in the state of New York, from the legislation of which state we borrow the act of 1832, to show that such bills are sustained in that state.

It is true that our statute is borrowed, and, in the parts which I have quoted from the Code, literally, from the New York act. It is also true that, under the statute of that state, when construed in connection with other provisions of their statute law, and rules of court adopted to enforce them, it has been the practice in that state, characterized by the Vice-Chancellor, in *Austin* v. *Dickey*, 3 Edw. Ch. 378, as anomalous, to sustain judgment creditor's bills against the defendant alone for discovery as to his property and effects. *Corning* v. *White*, 2 Paige, 567; *Bank of Monroe* v. *Schermerhorn*, 1 Clarke, 214; *McArthur* v. *Hoysradt*, 11 Paige, 495. Under such bills it has been declared to be a matter of course, where the equity of the bill is not denied upon the hearing of the application, to appoint a receiver, and to require the defendant to make an assignment of his property to the receiver, and to submit to an examination under oath as to his property and effects. *Bloodgood* v. *Clark*, 4 Paige, 574; Edw. on Rec. in Eq. p. 398. No such practice has ever prevailed in this state. And in the state of New Jersey, where the same statute was borrowed, it seems that additional legislation was required to enable the court to act. *Green* v. *Tantum*, 19 N. J. Ch. 108; *Frazier* v. *Barnum*, 19 N. J. Ch. 316; *Love* v. *Getsenger*, 7 N. J. Ch. 191. It is obvious, therefore, that the practice in New York must be based upon other legislation outside of the statute borrowed by this and other states, or must be declared to be in truth "anomalous."

The legislation was intended partly to supply the want of jurisdiction in the court of chancery to reach certain property of the debtor after the creditor had exhausted his remedy at law, and partly to enlarge the remedies of the creditor, which had been curtailed by the limitations put by

the legislatures of the states upon the right to imprison for debt.

A short sketch of the course of decision in the courts of chancery in reference to their power to aid creditors, and especially in the state of New York, will enable us, perhaps, to understand the subsequent course of the courts.

In *Bayard* v. *Hoffman*, 4 Johns. Ch. 450, Chancellor Kent expressed the opinion that the court of chancery had the power to aid a judgment creditor, who had exhausted his remedy at law, to reach property, such as stocks, choses in action, etc., which could not be reached by execution at law, and he undertook, by a review of the early English cases, to show that such was the conclusion of the English Chancellors prior to the war of the Revolution. He laid particular stress upon *Taylor* v. *Jones*, 2 Atk. 600, a decision of Fortesque, master of the rolls, and *King* v. *Dupine*, a decision of Lord Hardwicke cited in a note to that case. He relied, also, on *Horn* v. *Horn*, Amb. 79, by Lord Hardwicke, and *Partridge* v. *Gopp*, Amb. 596, and 1 Eden, 163, by Lord Northington. He admitted that the subsequent cases were otherwise, commencing with *Dundas* v. *Dutens*, 1 Ves. jr. 196, where Lord Thurlow met the doctrine with an emphatic doubt, a doubt which was, of course, kept up by Lord Eldon. *Rider* v. *Kidder*, 10 Ves. 360, 369. Afterwards, by the case of *Cailland* v. *Estwich*, 1 Anst. 381, and the rulings of Lord Manners in *McCarthy* v. *Goold*, 1 B. & B. 389, and *Grogan* v. *Cooke*, 2 B. & B. 233, no room was left for further doubt.

The lead of Chancellor Kent was followed by Judges Woodworth and Spencer, in the court of errors of New York, in *Hadden* v. *Spader*, 20 Johns. 554; and by Chancellor Walworth in *Edmiston* v. *Lyde*, 1 Paige 637, and *Farnham* v. *Campbell*, 10 Paige, 601; and has been approved by other courts of the United States. *Wright* v. *Petrie*, 1 Smed. & M. Ch. 320; *Lanmon* v. *Clark*, 4 McLean, 18.

On the other hand, Chancellor Sandford, in *Donovan* v. *Finn*, Hopk. Ch. 59, a case very ably argued, and especially

by Selden for the defendants, came to the conclusion that chancery, in the absence of fraud or trust, had no power to subject stocks, choses in action, or other property not leviable by execution. The conclusion reached has been concurred in by Vice-Chancellor McCoun, in *Congden* v. *Lee*, 3 Edw. 304, by the chancery court of New Jersey, in *Green* v. *Tantum*, 19 N. J. Ch. 108, and by our own supreme court, in *Erwin* v. *Oldham*, 6 Yerg. 185.

In this war of giants, "*non mi tantas componere lites.*" If, however, to the great names of Kent and Walworth could be added the greater name of Lord Hardwicke, it would be difficult to convince a lawyer of the present day that the weight of reason was not with them, whatever might be the weight of authority. Unfortunately for that side of the question, we have a positive decision of the master mind of English equity which seems to have been overlooked by Chancellor Kent, and is directly in accord with *Donovan* v. *Finn*. In both cases a judgment creditor, after exhausting his legal remedy, sought to reach a legacy due to the debtor in the hands of the executor of the decedent, and in both the decision, so far as it turned upon the inherent power of the court of chancery, was the same. In *Edgell* v. *Haywood*, 3 Atk. 352, the defendants made the point that the plaintiffs were improperly in equity to attach the legacy, being a chose in action not reduced into the possession of the debtor. "As to the first question, said the Lord Chancellor, I am of opinion the plaintiffs, as a judgment creditor, could not come into this court, and so I apprehend it has often been determined." "As to choses in action," he adds, "according to the general rules of this court, they are not liable to execution, not for the reason given by the defendant's counsel, but because the court takes notice that the creditor has a method by the ordinary rules of law, either by compelling satisfaction by seizing the person, or, where that cannot be taken, by proceeding to an outlawry, and taking the lands as well as effects by a *capias utlagatum*." But he held that the creditor was entitled to

come into chancery under the act of 10 Geo. 2, ch. 26, § 20, which provided that, notwithstanding the debtor's discharge of his person under the previous sections, "the prior debts and judgments shall stand and be effectual to all intents against the lands, tenements, goods, and chattels of the debtor, which he, or any in trust for him at the time of the discharge, had, or at any time thereafter should be any way seized or possessed of, interested in, or entitled unto, *either in law or equity*." "This has been treated," says the Chancellor, "as a saving clause, but I am of opinion that it is an enacting one, giving the creditor a competent remedy upon the future effects, as the statute precluded him from seizing or outlawing the person. * * * The court does not proceed in this case on the ground of a specific lien, but only considers it as a part of the property of the debtor which the creditor cannot come at without the aid of this court."

The language of this decision against the power of chancery to reach stock, debts, and choses in action, not leviable by execution, is quite as emphatic as that of Lord Thurlow, in *Dundas* v. *Dutens*, 1 Ves. jr. 198. It was only by virtue of the statute that the court could act. *Donovan* v. *Finn* was precisely the same case without the statute. I conclude, therefore, that this eminent judge was of the same opinion as his successors—that such property could not be reached directly in equity, but only through some other ground of jurisdiction, such as fraud or trust. All the English cases in which jurisdiction was assumed to reach such assets will be found to contain one of these additional elements, as was shown by Selden in his argument in *Donovan* v. *Finn*. The case of *Brown* v. *Long*, 2 Dev. & B. Eq. 138, is in exact accord with *Edgell* v. *Haywood*, being based upon a similar statute.

The conclusion reached by our supreme court in *Erwin* v. *Oldham* seems to me correct, and has been considered as the settled law of this state ever since. *Ewing* v. *Cantrell*, Meigs, 364; *Graham* v. *Merrill*, 5 Coldw. 633; *Lockhard* v.

*Brodie,* Sup. Ct. Tenn., December term, 1874. In the note to *Ewing* v. *Cantrell,* Mr. Meigs called attention to the fact that the act of 1832, ch. 11, was produced by the decision in *Erwin* v. *Oldham,* and was copied, almost literally, from the New York statute of 1828, which was itself produced by the ruling in *Donovan* v. *Finn.*

We must take it, therefore, that in this state equity could not subject stocks at all. How was it in regard to chattels in the possession of the debtor? "There are very few cases," says Lord Hardwicke, in *Edgell* v. *Haywood,* quoted above, "where it is necessary for this court to give relief to creditors over personal chattels in possession, because assignments of them to defeat creditors are void and fraudulent at law." That is to say, if they have been transferred to third persons fraudulently, the remedy is by levy upon them at law. If they remain in possession of the debtor, "the court takes notice that the creditor has a method by the ordinary rules of law," by seizing the person, or by proceeding to an outlawry. Accordingly, as early as 1686, in *Smitheir* v. *Lewis,* 1 Vern. 398, upon a bill filed by a judgment creditor to reach funds alleged to have been fraudulently vested in one E., by the judgment debtor, the debtor demurred, "for that there could not be a discovery of a man's personal estate in his life-time, and for that the bill was in the nature of a foreign attachment, which the practice of the court did not admit or countenance." The demurrer was overruled, doubtless, upon the ground of the power of the court to reach the money in the hands of the third person. The same point was made in 1705, in *Taylor* v. *Hill,* 1 Eq. Cas. Ab. 132, pl. 15. "The plaintiff having recovered judgment against I. S., supposing some effects of I. S. to be in defendant's hands, brought a bill to discover them in order to subject them to his judgment. The defendant demurred, because there is no equity to compel such a discovery, and no such bill would lie against the debtor himself, much less against a third person. Lord King *seemed to agree it would not lie against the debtor himself,* nor to have a general dis-

covery from a third person, but only for particular things, as this bill was, and overruled the demurrer.'' In *Francis* v. *Wigzell*, 1 Madd. 260, the bill was against husband and wife for specific performance, and charged that the wife owned separate property to a large amount, and called upon her to discover her separate property. A demurrer by her to so much of the bill was sustained. '' It is admitted,'' says the Vice-Chancellor, '' that if a similar interrogatory had been addressed to the husband as to his property, or to any other party against whom a specific performance was sought, such an inquisition into the circumstances of the defendant would not have been permitted.'' In *Donovan* v. *Finn*, Hopk. 91, Chancellor Sandford says : '' But this court has no power to cause stock, credits, and rights of action, *held by a debtor*, without fraud, to be sold or converted into money, or to be transferred to the creditor, or to be applied to the payment of debts. The English courts of equity have never exercised any power like that now proposed over the rights of a debtor ; and it is certain that no such power has ever been exercised by any court of this state.'' Of course fraud cannot be predicated of the possession by a debtor of his own property, simply because he is in debt ; for if it were otherwise the rule would amount to nothing.

The learned counsel of the complainants has not, nor have I, been able to find any case, or any judicial intimation, in conflict with these rulings and suggestions. It must be taken, therefore, that as chancery had no power to reach stocks or choses in action, even in the hands of third persons unaffected with fraud or trust, without the aid of a statute, so it has no power to reach personal chattels in the possession of the debtor without such aid.

The reason in both cases is that the remedy was plain, adequate, and unembarrassed at law—by seizure of the person of the debtor, or proceedings in outlawry—and that the abolishment of these legal remedies could not confer upon equity a jurisdiction it did not have before.

The act of the 18th of October, 1832, brought into the

Code, § 4283, *et seq.*, does confer the wanting jurisdiction as to stocks, choses in action, or other property " due to or held in trust " for the debtor, upon a bill filed " against the defendant in the execution, and any other person or corporation." The same statutory provisions, aided by the rules of court, have, as we have seen, been held by the courts of New York to authorize a creditor's bill against the defendant alone, under which a receiver may be appointed, and the defendant compelled to disclose and assign his property. In Michigan the same practice seems to prevail, under similar statutes and rules. *Howard* v. *Palmer*, Walk. Ch. 391 ; *Jones* v. *Smith*, Walk. Ch. 115. So, in New Jersey. *Frazier* v. *Barnum*, 4 C. E. Green, 317. The jurisdiction is based upon statutes substantially like ours, if not identically the same, and is enforced by process of contempt, under which the defendant may be imprisoned until he obeys the orders of the court. Although such imprisonment is, ordinarily, clearly distinguishable from imprisonment for debt, generally abolished by statute, and, in this state, by a special provision of the Constitution of 1870, yet the distinction is not without difficulty where the sole object of the proceeding for contempt is the enforcement of the payment of a debt. *Shultz* v. *Carter*, 1 Rich. Eq. 280. It is clear, however, that the peculiar construction of the laws of the states in which the practice in question prevails has never existed in this state. Neither the letter nor the spirit of our statutes demands or justifies such a construction, and the contemporaneous and subsequent practice for over forty years is in direct conflict with it. And it has been held that process of garnishment will not run against a person whose possession of the property of the debtor is, in effect, the possession of the debtor — such as a servant, the clerk of a merchant, or the treasurer of a corporation. *McGraw* v. *Memphis & Ohio R. R. Co.*, 5 Coldw. 434. Without statutory authority this court has no jurisdiction to institute " such an inquisition into the circumstances of the defendant," or to compel him, under the penalty of imprisonment,

to turn over to a receiver property in his possession. And the court declines to assume the exercise of a jurisdiction which it cannot carry through to a profitable issue. *Cartwright* v. *Pettus*, 2 Swans. 324, note; *Hope* v. *Hope*, 4 De G. M. & G. 348.

The chancery court of South Carolina followed the lead of the New York judges, in *Hadden* v. *Spader*, and *Edmiston* v. *Lyde*, and aided a judgment creditor, who had exhausted his remedy at law, to subject property of the judgment debtor which could not otherwise be reached. But that court declined to entertain a bill against the debtor alone of the same inquisitorial character as the one before us. *Verdier* v. *Foster*, 4 Rich. Eq. 227.

The application to appoint a receiver must, therefore, be refused.