JOSEPH PERKINS, defendant below, appellant *vs.* THOMAS CART-MELL, Adm'r. of MARGARET CARTMELL, complainant below, respondent.

When a court of equity acts in analogy to the acts of limitation, it adopts the exceptions also.

A legacy is not within the statute.

The principle of acts of limitation is repose and public policy; sit finis litium.

They do not in terms extend to courts of equity, but these courts approve of the principle, and apply it to analogous cases.

Where the act bars the legal remedy, the remedy in equity is held barred by analogy.

Independently of acts of limitation a court of equity will refuse to aid a stale demand, on the ground of laches and public policy; as well as on a presumption of payment.

There is no bar in case of a trust; but where the trustee disclaims and stands in a hostile relation to the cestui que trust, for a great length of time, even a trust will be defeated. Equity will presume an extinguishment of the trust in the case of real estate, after twenty years' adverse holding.

APPEAL from the decree of the Chancellor, in and for New Castle county.

Tried at June term, 1845, before Judges Booth, Harrington, Milligan, and Hazzard.

The bill stated that Caleb Perkins, died 28th of June, 1804, seized of real and personal property, and by his will dated 24th May, 1804, bequeathed to his daughter Margaret, wife of Thomas Cartmell, one hundred pounds, subject to the deduction of testator's book account against her, to be paid in three years after testator's death, by his son, Joseph Perkins, out of certain real estate devised to him, and made his said son and one Isaac Stevenson, executors; who proved the will and took possession of the personal property, and said Joseph, of the real estate devised to him as aforesaid, charged as aforesaid. His daughter Margaret continued under coverture until the 9th of January, 1838, when her husband, Thomas Cartmell, died. She survived him until the 24th of Dec., 1841, and died, leaving five children, of whom complainant, her administrator, is one. He administered on the 16th of September, 1842. The said legacy was never paid to Thomas Cartmell in his life time, nor to his widow, nor any part of it, though frequently demanded. It survived to the said Margaret on the death of her husband, and complainant as her administrator, is entitled to it; with interest from the 28th of June, 1807.

The bill prayed an account, and for payment of the legacy, and for further relief, &c.

The answer admitted the material statements of the bill, but denied that any demand had been made for said legacy for more than *thirty* years; that the legacy was in fact satisfied by a book account left by testator, to the amount of £50 5s.; and a note of hand due him from said Thomas Cartmell, the husband, of £45 ; which was not collected by this defendant, being considered both by Thomas Cartmell and himself, as applicable to the legacy, and to be deducted therefrom ; and the said Thomas Cartmell, bought at the vendue, articles more than sufficient to pay the balance of said legacy ; so that for more than thirty years said legacy had been regarded by all parties as *paid :* and relied on the lapse of time as a *bar* to the demand.

The only important facts proved by the depositions were, that complainant called on defendant before filing the bill, to examine the testator's books and come to a settlement; that there was a charge on said books of £11 5s., against Margaret Cartmell, and the defendant showed a note of Thomas Cartmell, deceased, to the testator, for £45 5s., and a vendue list containing articles purchased at the vendue, by Thomas Cartmell, amounting to $36, which defendant said were the only charges he had against Thomas Cartmell, deceased, or his wife ; and that defendant declined a reference.

On the hearing of the cause before the chancellor, an interlocutory decree was made according to the prayer of the bill ; for which he now assigned the following reasons:

JOHNS, JR., *Chancellor.*—I suspended my judgment on the plea of actual payment, but the book shown me was so altered that I suspected it. I thought also from the devisee and executor, who was still alive, presenting Thomas Cartmell's note, still in his possession, that there had never been a settlement or he would have delivered it up. I thought these were rebutting circumstances to the presumption of payment. In addition to this I considered the settled rule of equity, in a matter of presumption, to be, that they followed the acts of limitation both as to the bar and the exceptions. In analogy to the statutes of limitation I thought the widow's claim protected by her coverture. (*a*)

_____

(*a*) The chancellor subsequently handed to the reporter the reasons for his interlocutory decree, more at length. On the subject of limitations in equity, he remarked :—" I admit in all cases to which the statute of limitation can be applied, it is a good plea in equity as well as at law. The statute operates as a bar to the remedy at law, and is applied by analogy in equity,

The appeal was from this decree, and was argued by *Rogers, jr.*, for appellant ; and *Gilpin*, for appellee ; on 1st. The evidence of

and therefore, cannot be applied to those trusts which are the mere creatures of equity, for there is no ground in such cases for comparison ; but when the same subject matter of demand in equity can also be made the subject or cause of action at law, the rule of analogy applies in all its force.    In Bond *vs.* Hopkins, 1 *Sch. & Lef.* 413, Lord Hardwicke observes, ' the statute of limitations does not apply in terms to proceedings in courts of equity, but equitable titles are affected by analogy to it.'    In Hovenden *vs.* Lord Annesley, 2 *Sch. & Lef.* 607, Lord Redesdale went more at large into the doctrine of limitation of suits in equity.    The principle of the last case is, that where the party has a legal as well as an equitable remedy for the same cause, if the equitable title be not acted on in the same time the legal title should be, it is barred.    In the case of Kane *vs.* Bloodgood, Chancellor Kent takes it for granted as the assumed and settled doctrine, that an action at law will not lie in the case of a mere charge upon land where there is no personal undertaking.    (7 *Johns. Ch. Rep.* p. 113.)    Chief Justice Spencer, in a case reported, 20 *Johns.* 576, 610, after adverting with approbation to the opinion of Lord Hardwicke, in Sturt *vs.* Mellish, 2 *Atk.* 610, and showing that the plaintiff had ample remedy at law, observed, ' I have therefore, no hesitation in saying that in a case where there is a concurrent jurisdiction in the courts of common law and equity, the rule must be the same, and the statute of limitations may be pleaded with the same effect in one court as in the other.    In cases of fraud, peculiarly, appropriately and exclusively the objects of equity jurisdiction, according to the established doctrine, the statute cannot be pleaded.'

If in the present case, the legacy had been payable by the executor out of the personal effects, then the jurisdiction of the courts of common law and equity, upon such a cause of action being concurrent, the analogy would exist and the statute would apply, extending to the wife surviving, the three years according to the exception.    For by the act in *Dig. Del. Laws*, p. 228, an action of assumpsit may be maintained against an executor or administrator, for a legacy or a distributive share.    Assetts in the hands of an executor or administrator to pay a legacy, shall create a legal liability and raise a consequent promise to pay it.    ' *This action shall not lie for a legacy which is either directly or by implication the subject of a Trust.*'

The claim made in this suit, being for a sum charged by will on real estate devised and to be paid therefrom by the devisee, is a trust, only capable of being enforced in a court of equity, which has the exclusive jurisdiction, and therefore must be, according to the rule established by all the cases, excluded from the operation of the statute of limitations."

payment.  2d. The presumption of payment.  3d. The application of the act of limitation.

*Mr. Rogers,* cited, 2 *Ves. jr.* 11 ; 3 *Bro. Ch. Ca.* 639, *n,;* 4 *Bro. Ch. Rep.* 214-57 ; 4 *Eng. Chy. Rep.* 521 ; 8 *Bligh.* 622 ; 2 *Iredell's Eq. Rep.* 282 ; 13 *Pick. Rep.* 393 ; 9 *Pet. Rep.* 405 ; 17 *Ibid* 197.

*Mr. Gilpin,* cited, 2 *Story's Eq.* 505, *sec.* 1520 ; 3 *Bro. Ch. Rep.* 527, *n.* 7 ; 1 *Sch. & Lef.* 414-39 ; 2 *Ibid* 607-29-42 ; 3 *P. Wms.* 287, *n.* 6 ; 6 *Cond. Rep.* 58, (10 *Wheat.* 152 ;) 1 *Law Lib.* 35, (*Blansh. on Lim.*)

*The Court* reversed the decree of the chancellor and dismissed the the complainant's bill.

The Chief Justice delivered the opinion of the court.

BOOTH, *Chief Justice.*—It is attempted to support the decree in this case on two grounds : 1st. That as a court of equity acts in analogy to the statutes of limitation, it adopts the exceptions contained in those statutes in favor of the disabilities of infancy, coverture, &c.  That as Margaret Cartmell was under the disability of coverture when the will was made, and so continued until the death of her husband in 1838; the right to institute a suit for this legacy was saved to her, during that period; and afterwards to her and her administrator, until the expiration of ten years from the removal of her disability; by analogy, it is said, to the saving in the act for the limitation of actions and entries concerning lands.  (*Dig.* 396.)  Therefore, that this suit, notwithstanding the lapse of time, is protected by the coverture of Margaret Cartmell.

2d. Supposing this to be a case where a court of equity acts independently of any statute of limitation, and presumes payment or satisfaction from length of time ; it is further argued, that the presumption is repelled, 1st. By the coverture of Margaret Cartmell : 2dly. By the fact, that the defendant undertakes to show the manner in which this legacy was settled and paid; and upon the production of the testator's book account, the note of Thomas Cartmell, deceased, and the vendue list, it does not appear that any settlement was made : and although the book showed considerable transactions between Thomas Cartmell and the testator, and but one item against Margaret Cartmell, it was not entitled to credit, because some alteration appeared to have been made in it.

Upon neither of these grounds can this decree be sustained.  1st. In those cases where courts of equity act in analogy or conformity to the statutes of limitation, they adopt the exceptions in favor of the usual disabilities.  If the statute is not adopted, the exception is

not. As a legacy is not within the statute of limitation, it cannot be said, that courts of equity in suits for legacies, adopt the statute or its exceptions, or act in analogy or conformity to the statute. Therefore, the coverture of Margaret Cartmell is no protection to this suit by virtue of the saving clause in the act (*Dig.* 396,) for the limitation of actions and entries concerning lands; because the act itself does not extend to the case of a legacy.

This is apparent from a consideration of the reasons which have induced courts of equity to adopt the several statutes of limitation. It was a rule of the common law, that a right never dies; and therefore the power existed of instituting actions at any length of time, however distant from the period when the right first accrued. To quiet possessions, to secure repose from litigation, and to prevent perjury, fraud, and injustice, it was found necessary to restrain the exercise of this power. For this purpose, the several statutes of limitation were passed, prescribing certain periods within which actions were required to be instituted; and in case of neglect, that the lapse of time might be insisted upon, as a complete bar. These statutes in their terms are confined to actions at law, and do not extend to suits in equity. But courts of equity consider themselves within their spirit and meaning; and that sound policy and public convenience require their adoption. Hence it is an established rule, that where the statute bars the legal remedy, it shall bar the equitable remedy in analogous cases, or in reference to the same subject matter, and where the legal and equitable claim so far correspond, that the only difference is, that the one remedy may be enforced in a court of law, and the other in a court of equity. (*Meldicot* vs. *O'Donel*, 1 *Ball & Beatty* 156; *Thomas* vs. *Harvie's heirs*, 10 *Wheaton* 149, 150; *Elmendorf* vs. *Taylor*, 10 *Wheaton* 168, 170.) In Smith *vs.* Clay, 3 *Bro. C. C.* 639, *note*, Lord Camden says: "As often as Parliament has limited the time of actions and remedies, to a certain period, in legal proceedings, the Court of Chancery adopted that rule and applied it to similar cases in equity." "And therefore in all cases where the legal right has been barred by Parliament, the equitable right to the same thing has been concluded by the same bar."

Thus, as the statute, 4 *Hen.* 7, *chap.* 24, called the Statute of Fines, bars the right of action or entry, unless pursued within five years next after proclamations made, or after the right accrues, an equity of redemption, is barred by a fine levied within five years from the day on which the last proclamation was made. (*Salisbury* vs. *Baggot*, 2 *Swanst.* 603.)

So too, as the statute, 21 *James* 1, *chap.* 16, bars the right of entry into lands after an adverse possession of twenty years, a court of equity will not permit the mortgagor to redeem, after he has suffered the mortgagee to remain in the undisturbed possession of the mort-gaged premises for twenty years: And the reason given, is, "that the court is bound to regulate its proceedings by analogy or in obe-dience to the statutes of limitation." (*Blanchard on Limitation,* 64, 65, and cases there cited.)

For the same reason, the mortgagee is barred, after he has per-mitted the mortgagor to remain in possession of the mortgaged premises for twenty years, without account, and without any pay-ment of interest, or promise to pay, or acknowledgment that the mortgage is still existing. (*Hughes* vs. *Edwards,* 9 *Wheaton* 467.)

The period of limitation adopted in conformity to the statute 21 *James* 1, is not confined to the case of a mortgagor and mortgagee; but extends to all equitable estates, or equitable titles or claims to land, where an adverse possession of twenty years has been acquies-ed in; and where, had it been the case of a legal estate, the party claiming must have sued in a court of law within that period. (*El-mendorf* vs. *Taylor,* 10 *Wheat.* 170-4, and authorities there cited. *Miller* vs. *McIntyre,* 6 *Peters* 66; *Piatt* vs. *Vattier,* 9 *Peters* 416.

A bill of review is barred in England after twenty years, by an-alogy to the statute 10 and 11 *Wm.* 3, which barred writs of error after that period. (*Smith* vs. *Clay,* 3 *Bro. C. C.* 639, *note.*)

But in the courts of the United States, a bill of review is barred after five years from the time of pronouncing the decree, by analogy to the act of Congress which limits appeals in equity to that period. (*Thomas* vs. *Harvies' heirs,* 10 *Wheat.* 146.)

Where a personal action is barred at law by the statute of limita-tion, a bill for relief is barred in equity; and therefore accounts for rents and profits are limited to six years, by analogy to the time of limitation at law. (*Parker* vs. *Ash,* 1 *Vern.* 256; *Reade* vs. *Reade,* 5 *Ves.* 749; *Stackhouse* vs. *Barnston,* 10 *Ves.* 469.)

Courts of equity thus acting in obedience to the statutes of limita-tion in cases analogous to those on which the statutes operate at law, have adopted in such cases, the exceptions in favor of the usual dis-abilities; and allow to those laboring under them, the same time to sue in equity, as they would be entitled to, at law, in case of a legal claim. (*Lytton* vs. *Lytton,* 4 *Bro. C. C.* 458; *Belch* vs. *Harvey,* 3 *P. Wms.* 287, *note.*)

The result clearly follows, that if no statute of limitation bars the

case at law, the same, or the analogous case in equity is not barred. (*Stackhouse* vs. *Barnston*, 10 *Ves.* 466.) And that where the statute is not adopted, the saving clause which it contains, in favor of a disability, is not adopted.

A legacy was not barred by any statute of limitation, prior to the 3 and 4 of *Wm.* 4. That such was the received doctrine of courts of equity, is manifest by the many cases, where the only question was, whether after a great length of time, payment should be presumed. (*Higgins* vs. *Crawfurd,* 2 *Ves., jr.* 571; *Parker* vs. *Ash,* 1 *Vern.* 256.)

Therefore, the principle adopted and relied upon, to support the present case, namely: that ten years are allowed after the coverture of Margaret Cartmell ceased, for filing a bill for this legacy, by analogy, as is said, to the proviso in the act of 1793, for the limitation of actions and entries concerning lands, *Dig.* 396, is a principle arbitrarily assumed, and unsupported by precedent or authority.

With quite as much reason might the proviso of any other act of limitation be adopted. As the action of assumpsit is a remedy given by our act of assembly (*Dig.* 228,) against an executor for a legacy; and as the act (*Dig.* 397, 398,) which bars assumpsit after the expiration of three years from the accruing of the cause of action, contains a proviso saving to persons under disability, the right to sue within three years from its removal; it would seem to have more the appearance of reason, to adopt the proviso of the latter, than of the former act.

2. This suit is barred by lapse of time independently of the statutes of limitation, upon the presumption of payment and satisfaction, which presumption is not rebutted.

The defence founded upon mere lapse of time and the staleness of the claim, in cases where no statute of limitation directly governs the case, is said by Judge Story, (2 *Comm. on Equity Jurisprudence,* § 1520, *p.* 904,) to be a defence peculiar to courts of equity.

Upon general principles of their own, independently of the statutes of limitation, they have always discountenanced laches and neglect; and refused their aid to stale demands where the party has slept upon his right, or acquiesced for a great length of time. They are never active in relief against conscience or public convenience. After a considerable lapse of time, they refuse to interfere, from considerations of public policy and the difficulty of doing entire justice when the original transactions have become obscure by time and the evidence may be lost. This is their established doctrine. (2 *Story's Equity Jurisprudence,* § 1520, and notes; *Smith* vs. *Clay,* 3 *Bro.*

*C. C.* 640, *note ; Piat* vs. *Vattier,* 9 *Peters' Rep.* 416, and cases cited ; *McKnight* vs. *Taylor,* 1 *Howard's Rep. Sup. Court, U. S.* 168.)

In all cases in equity, where the statutes of limitation do not operate, suits are barred by lapse of time: 1st. Upon the ground of public policy, the peace of society, the inconvenience of the relief, or that it is against conscience or good faith: 2d. Where the presumption arises of something having been done, which is adverse and destructive to the plaintiff's demand. Every reasonable presumption is made from lapse of time which the circumstances of the case will fairly admit. For example ; in the case of an express or direct trust, as between the cestui que trust and trustee, there is no bar by the statute of limitation ; and so long as the trust is admitted by the acts or declarations of the parties, there is no bar by lapse of time. But if the trustee disclaims, disavows, or denies the right of the cestui que trust, and the latter acquiesces for a great length of time, as for instance, in the case of real estate for a period of twenty years, a court of equity will presume an extinguishment of the trust. (*Kane* vs. *Bloodgood,* 7 *Johns. Chy. Rep.* 123, 124 ; *Willison* vs. *Watkins,* 3 *Peters' Rep.* 48, 52 ; *Boone* vs. *Chiles,* 10 *Peters' Rep.* 223.)

But the defence founded on presumptions from lapse of time, is not peculiar to courts of equity. At common law, although as has been said, it was a rule that a right never dies ; presumptions were always raised from lapse of time, independently of the statutes of limitation. These presumptions like the doctrine of courts of equity are the result of human experience ; and are founded on the same principles of public policy, to quiet possessions and prevent litigation, which dictated the several statutes of limitation. The uninterrupted, exclusive and adverse enjoyment of an incorporeal hereditament for twenty years, has been held at common law, as a conclusive presumption of title. (*Bealy* vs. *Shaw,* 6 *East* 215.) Conveyances between individuals and grants from the crown or a sovereign state, notwithstanding the legal maxim " nullum tempus occurrit regi " have been presumed after the lapse of many years of uninterrupted and adverse possession. The lapse of twenty years raises the presumption, that bonds, judgments, decrees, recognizances and other matters of record have been satisfied ; and unless repelled by circumstances explaining the delay, or by evidence of an acknowledgment of the debt within that period, the presumption is conclusive, and is a complete bar under the plea of payment. A legacy charged upon land is within the same principle. No sufficient reason can be

given for making any distinction in this respect between it, and the case of a judgment or recognizance binding on lands.

In the present case, the legacy was bequeathed to Margaret Cartmell when a feme covert, and became due during her coverture. George Cartmell, her husband, during his life time, had absolute control over the legacy; was the only person who had a right to demand it; to whom payment could be made; or by whom an acquittance or discharge could be given. He lived upwards of thirty years after it became due. Under these circumstances the law raises the presumption from the mere lapse of time, that payment or satisfaction was made to him. No fact is proved which repels this presumption. The parties all lived in the same neighbourhood. Margaret Cartmell lived upwards of thirty-three years after the legacy became due. It does not appear that any demand of payment was ever made by her or her husband. After the lapse of thirty-five years, it is said the complainant, as the administrator of Margaret Cartmell, made a demand of the defendant; but even this fact is denied by the answer. For thirty-five years then, the claim has been permitted to slumber. Nothing is shown to account for, or in any manner to explain this laches and neglect. No obstacles have been interposed by the defendant in the way of a settlement; nor is there the slightest evidence of an acknowledgment, part payment, or promise to pay, on his part, at any time; but on the contrary, a positive denial that any thing was due. The presumption of payment from the mere lapse of time, being in nowise repelled, is conclusive. Had Thomas Cartmell, after twenty years from the time the legacy became due, instituted a suit against the devisee of the land, the lapse of time without any proof of a recognition of the claim, would have been conclusive, and equivalent to evidence of an actual payment. It is admitted in the argument, that had he sued either alone, or joined his wife, the suit after the lapse of twenty or twenty-five years, would have been barred. On what principle then, can it be maintained, that the coverture of Margaret Cartmell rebuts this presumption of payment? How can the fact of her surviving her husband, extinguish all the evidence in the case, and confer on her, or her administrator, a right to recover a legacy, which in contemplation of law, has been paid and satisfied to the only person who for thirty years had a right to demand it, and to whom payment or satisfaction could legally be made?

Equally untenable is the position, that the presumption is rebutted,

because on the production of the testator's book account and the other exhibits, a settlement is not shown; or because an alteration seems to have been made in the testator's book, but whether by the testator, or by whom, does not appear. The defendant avers in his answer, that the legacy was paid and satisfied in a settlement of the transactions between him and Thomas Cartmell respecting the testator's personal estate; and he names the items that entered into the settlement; and they manifestly overpay the legacy. By the account produced as an exhibit, which was settled by the defendant as executor, before the register of New Castle county, on the 29th of December, 1807, six months after the legacy became due, it appears that the defendant was charged as executor, with two of those items, namely, the note of £45, given to the testator by Thomas Cartmell, and the amount of the articles purchased by him at the vendue, neither of which the defendant avers in his answer, was ever paid to, or collected by him, in consequence of the understanding between him and Thomas Cartmell, that they were to be deducted from the legacy. The note is still in the defendant's possession. By the testator's will, two-thirds of his personal estate were given to the defendant to assist him in discharging the legacies which he was directed to pay. It is not reasonable to suppose that the defendant would have made himself personally liable in his settlement before the register, for the amount of the note and the articles purchased at the vendue, unless Cartmell had paid such amount, or agreed that it should be set off against the legacy. On the other hand, the supposition is equally improbable, that Cartmell would have made such payment without requiring payment or satisfaction of the legacy. The conduct of the parties can be reconciled only upon the ground that all these matters were settled between them, and that Cartmell thus appropriated and applied the legacy of his wife to his own use and benefit. He had the legal right to do so; and it is a very reasonable and natural inference that he exercised a right to which his interest strongly impelled him. The consideration of these transactions confirms the presumption of payment, instead of impairing it. But, suppose some obscurity may rest over the case, which cannot at this length of time be satisfactorily removed. Is it not unreasonable after the lapse of thirty-five years, to require a clear explanation of difficulties which may exist in matters of account, and to conclude that no settlement was ever made, because none can be shown by a book of accounts, or by a calculation in figures? It is for the very reason, that doubts and difficulties do occur in such cases, and

because there are no means of creating belief or disbelief, that the presumption of law is raised and adhered to. (*Prevost* vs. *Gratz*, 6 *Wheaton* 504; *Hillary* vs. *Waller*, 12 *Ves.* 266.) And though it has often happened to be against the truth of the fact, yet it is better for the ends of general justice, that the presumption should be made and favored, and not be easily rebutted. (Per Lord Commissioner Eyre, in *Jones* vs. *Tuberville*, 2 *Ves. jr.* 13.)

In the present case, after the lapse of thirty-five years, when the dealings and transactions between the original parties must necessarily be involved in some uncertainty; when those who had the best opportunities of being acquainted with those dealings and transactions may be dead, or those who undertake to testify can speak only from a faded and doubtful recollection, the effort is now made to compel the payment of this claim, with nothing to sustain it, but the single, insulated fact, that the testator bequeathed the legacy, and charged it on the land of his devisee. The case then, is one where the defence founded upon lapse of time, said to be a defence peculiar to courts of equity, must prevail, by raising the presumption of payment and satisfaction; which so far from being repelled by any thing shown in evidence, is confirmed by corroborating circumstances, and therefore becomes conclusive.

The judgment of the *Court* is, that the decree be reversed and the bill dismissed.