ANTON J. DITTMAR, Respondent, *v.* GEORGE J. GOULD and Others, as Trustees under the Last Will and Testament of JAY GOULD, Deceased, Appellants, Impleaded with BONI COUNT DE CASTELLANE and ANNA GOULD, Countess DE Castellane, Defendants.

*Creditor's action to obtain the income of a trust fund to which the debtor is entitled — a judgment and execution returned unsatisfied must be shown, although the debtor is outside the jurisdiction of the court.*

A creditor of the beneficiary of a trust, created by a person other than the beneficiary, to receive the rents and profits of real and personal estate, cannot maintain an action under 1 Revised Statutes, 729, section 57, to reach the surplus of such rents beyond the sum necessary for the education and support of the beneficiary unless he has recovered a judgment against such beneficiary and an execution issued thereon has been returned wholly or partly unsatisfied, as

provided in sections 1871–1879 of the Code of Civil Procedure, which supersede 2 Revised Statutes, 173, 174, sections 38, 39.

The fact that the beneficiary of the trust is without the jurisdiction of the court will not excuse the creditor's omission to obtain a judgment and issue an execution.

O'BRIEN and INGRAHAM, JJ., dissented.

APPEAL by the defendants, George J. Gould and others, as trustees under the last will and testament of Jay Gould, deceased, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 30th day of January, 1901, continuing an injunction *pendente lite.*

*Edward C. James* and *Charles A. Gardiner,* for the appellants.

*Samuel Untermyer,* for the respondent.

McLAUGHLIN, J.:

This action is brought to obtain a judgment establishing certain alleged claims against the defendants, the Count and Countess de Castellane, and applying in payment thereof a portion of the surplus income arising from a trust estate, created by the will and codicils thereto of the late Jay Gould, in favor of his daughter Anna Gould, the Countess de Castellane.

The plaintiff, according to the allegations of the amended complaint, is the assignor of one Asher Wertheimer, of London, England, who, it is alleged, sold and delivered, prior to the commencement of the action, to the Count and Countess de Castellane, at Paris, France, personal property of large value, in payment of which they accepted drafts (copies of which are set out in the amended complaint), and payment having been refused the same were assigned to the plaintiff in this action; that since the maturity of the drafts the defendants Castellane have been and now are at Paris, France, where they expect to remain, and for that reason it is, and will be, impossible to serve either of them with the process of this court, or otherwise to acquire jurisdiction over them in any action which may be brought against them to establish such claim; that the plaintiff has no adequate remedy at law to secure the payment of the alleged indebtedness and the same cannot be secured unless he can obtain the relief prayed for in the complaint in this

action; that the defendants, other than the Castellanes, are trustees under the will of Jay Gould, and as such hold a large amount of property for the benefit of the defendant, the Countess de Castellane, the income of which she is entitled to receive as the same accrues and which will amount to nearly $900,000 a year; that the issue of the marriage between the Count and Countess de Castellane are two children, and that an annual sum of $100,000, and no more, is a necessary and reasonable sum for the proper support of the Countess de Castellane and the support, maintenance and education of her children, according to their condition and station in life.

The judgment demanded is that so much of the net income of the trust estate, over and above such sum as the court may determine to be necessary for the support of the countess and the support, maintenance and education of her children, be applied towards the payment of the sums due or to become due the plaintiff upon said claims, and that said defendant trustees be enjoined from receiving the rents, issues and profits of said trust estate, over and above such sum as shall be determined by the court to be necessary for the proper support of the countess and her children, and that the said trustees account to a receiver to be appointed in the action to take charge of such excess.

The defendants, the Count and Countess de Castellane, were not served with the summons or complaint, and they have not appeared in the action. The other defendants were served and they have interposed an answer, in which they have denied substantially all of the material allegations of the complaint, and have also set up certain affirmative defenses.

Upon the complaint, answer and certain affidavits, an order was made continuing a preliminary injunction enjoining the said trustees " from paying over to the defendant Anna Gould, Countess de Castellane, or to any person acting for her or on her behalf, any part of the rents, issues, profits, income or avails, in the hands of said defendants or under their control, or that (of) any of them, as trustees under the last will and testament of Jay Gould, deceased, or otherwise, in so far as the same constitute any part of the trust fund or estate created by said will for the benefit of the defendant Anna Gould, now Countess de Castellane, or from applying any part of the said trust fund or of the income or avails thereof, to the

payments of the debts or obligations of the said defendant Anna Gould, Countess de Castellane, or toward her support or maintenance or that of her children, until the further order of this court."

From this order the defendant trustees have appealed, and it is urged by them that the order should be reversed, principally upon the ground that, assuming all of the facts stated in the amended complaint to be true, the court has no jurisdiction over the subject-matter of the action or power to grant the relief asked.

There can be no doubt that a creditor now has the right to have the surplus income of a trust estate created for the support of his debtor applied towards the payment of his debts. This right is purely statutory. It did not formerly exist, even where the trust was created by the debtor himself. This, however, was changed by the Revised Statutes, and jurisdiction was by it given to the court to appropriate property held in trust or the avails of it, when such trust was created by the debtor. (*Donovan* v. *Finn*, Hopk. 59; *Pettit* v. *Candler*, 3 Wend. 618; *Hadden* v. *Spader*, 20 Johns. 554.) The provisions of the Revised Statutes (2 R. S. 173, 174, §§ 38, 39) were: "§ 38: Whenever an execution against the property of a defendant shall have been issued on a judgment at law and shall have been returned unsatisfied, in whole or in part, the party suing out such execution may file a bill in chancery against such defendant and any other person to compel the discovery of any property or thing in action belonging to the defendant, and of any property, money or thing in action due to him or held in trust for him; and to prevent the transfer of any such property, money or thing in action, or the payment or delivery thereof to the defendant, except where such trust has been created by, or the fund so held in trust has proceeded from some person other than the defendant himself. § 39: The court shall have power to compel such discovery and to prevent such transfer, payment or delivery, and to decree satisfaction of the sum remaining due on such judgment out of any personal property, money or things in action belonging to the defendant, or held in trust for him, with the exception above stated, which shall be discovered by the proceedings in chancery whether the same were originally liable to be taken in execution at law or not." Both of these provisions of the

statute were embodied in and superseded by sections 1871 to 1879 of the Code of Civil Procedure, under which it will be observed that the right to maintain a creditor's action does not depend in any respect upon the question of fraud, but solely upon the plaintiff's complying with the statute, which alone confers power upon the court to act. It is absolutely necessary, therefore, before an action can be maintained under these sections, that a judgment shall be recovered by the plaintiff and an execution issued thereon and returned wholly or partly unsatisfied unless there be appropriate allegations inserted in the complaint to the effect that a trust has been created or property transferred in fraud of creditors, in which case the court has inherent jurisdiction which in no way depends upon the power conferred upon it by, and which it exercises independent of, the statute. (*National Tradesmen's Bank* v. *Wetmore,* 124 N. Y. 241; *Patchen* v. *Rofkar,* 12 App. Div. 475; S. C., 52 id. 369.)

The sections of the Code referred to do not give the right to a creditor to maintain an action to reach the avails of a trust estate created by any one other than the defendant. This right, however, is given by the Revised Statutes (1 R. S. 729, § 57). This section of the Revised Statutes provides that: "§ 57: Where a trust is created to receive the rents and profits of lands, and no valid direction for accumulation is given, the surplus of such rents and profits, beyond the sum that may be necessary for the education and support of the person for whose benefit the trust is created, shall be liable in equity to the claims of the creditors of such person *in the same manner as other personal property which cannot be reached by an execution at law.*" This provision, in terms, relates only to real estate, but it has been held to apply equally to personal property. (*Williams* v. *Thorn,* 70 N. Y. 270; *Tolles* v. *Wood,* 99 id. 616; *Wetmore* v. *Wetmore,* 149 id. 520.) The words, "in the same manner as other personal property which cannot be reached by an execution," obviously refer to the provisions of the Revised Statutes above quoted, and which were embodied in and now form the sections of the Code (§§ 1871–1879) hereinbefore referred to. In what manner, then, can other personal property be applied to the payment of a debt which cannot be reached by an execution at law? The answer to this question is found in these sections, and it

is *only* where a judgment has been recovered against a debtor and an execution thereon has been issued and returned wholly or partly unsatisfied. The recovery of a judgment, the issue and return of an execution are absolutely necessary before a creditor has any standing in court; until that has been done the court has no jurisdiction to grant any relief whatever.

The plaintiff here has not brought himself within the provisions of the statute. Indeed, it is conceded by his counsel in the brief submitted upon the argument before us that the action is not brought under the statute, but it is insisted, inasmuch as the defendants Castellane are outside of the jurisdiction of the court, and for that reason it is impossible to obtain a judgment against them upon the alleged claims, that the court has inherent jurisdiction to grant the relief asked, and in this connection our attention is called to a line of authorities in which compliance with the statute has been excused. (*Shellington* v. *Howland,* 53 N. Y. 371; *Hirshfeld* v. *Bopp,* 145 id. 84; *National Tradesmen's Bank* v. *Wetmore,* 124 id. 241; *Lefevre* v. *Phillips,* 81 Hun, 233; *Patchen* v. *Rofkar,* 12 App. Div. 475; S. C., 52 id. 369.)

These cases are not in point. The decision in each of them was placed upon the ground either that in actions to hold the defendants liable under the statute, as stockholders or directors of a corporation, for the debts of a corporation where the performance of certain conditions becomes impossible by reason of the operation and effect of a statute, or becomes illegal, performance is excused and the rights of the parties will be preserved (*Shellington* v. *Howland, supra; Hirshfeld* v. *Bopp, supra*); or where there has been a fraudulent disposition or transfer of property, in which case the court has inherent jurisdiction. (*National Tradesmen's Bank* v. *Wetmore, supra; Patchen* v. *Rofkar, supra; Lefevre* v. *Phillips, supra.*)

The case before us obviously does not fall within either class. The trust was not created in fraud of creditors. It was created long before the plaintiff's claim came into existence, and so far as appears, before the Countess de Castellane had any creditors whatever. The court, therefore, has no inherent jurisdiction, and not a suggestion is made showing why the plaintiff should not comply with the statute, except that service of process cannot be made upon

the defendants Castellane inasmuch as they are outside of the jurisdiction of the court, and as to this, it, of course, in no way affects the jurisdiction of the court over the subject-matter of the action. Before the plaintiff can have any standing in court he must comply with the provisions of the statute, or appropriate allegations must be inserted in the complaint to the effect that by reason of a fraud practiced upon him the court has inherent jurisdiction. ( *Ward* v. *Boyce,* 152 N. Y. 191; *Capital City Bank* v. *Parent,* 134 id. 527.) Before the income from the trust estate can be taken from the Countess de Castellane she must be brought into court by the service of process upon her in this State, or by her voluntary appearance, and it must be adjudged and determined that she is liable upon the plaintiff's alleged claims and that only so much of the income of said trust is necessary for her support and the support, maintenance and education of her children. She must have her day in court. This right is guaranteed to her by the Constitution of the State (Art. 1, § 2), and the court has no power to deprive her of it. It can no more be done in an action in equity than it could in an action at law. In either case, before she can be subjected to a personal liability, jurisdiction must have been obtained of her person.

What was said by Judge O'BRIEN in *Ward* v. *Boyce* (*supra*) is as applicable in this case as it was in that. He said: " A party cannot be deprived of property without due process of law, and that term in its application to judicial proceedings means a course of legal proceedings according to those rules and principles which have been established by our jurisprudence for the protection and enforcement of private rights. If the proceedings involve the determination of the personal liability of the defendant he must be brought within the jurisdiction by service of process within the state, or voluntary appearance. If it be a proceeding *in rem,* the *res* must have been seized or attached, or at least must be within the jurisdiction. * * * The action was in the nature of a creditor's suit, by a creditor at large against the debtor, and such third parties as had in their hands rights, credits or equities applicable to the payment of the claim. The debt against the principal defendant, and the fact that the other parties held some property in trust for him, were, by the scheme of this suit, to be established in the same action. The initiatory step was to prove the debt and establish it

by the judgment of the court, and unless jurisdiction was obtained for that purpose of the necessary parties, the subsequent steps for its collection cannot stand."

*Capital City Bank* v. *Parent* (*supra*) is also in point. There the action was in the nature of a creditor's bill upon a judgment recovered against a non-resident defendant, who had been served by publication. A warrant of attachment had been issued and a levy under it was alleged to have been made. It appeared, however, on the trial that the levy was not, in fact, made, or if made, that it was thereafter abandoned. This fact having been made to appear, the court held that the action could not be maintained; that the service of the summons by publication did not give the court jurisdiction of the person of the debtor, and the failure to levy under the attachment deprived the court of jurisdiction to enforce any judgment there obtained against the debtor's property.

Here, the plaintiff, as already indicated, seeks to have the indebtedness of the Countess de Castellane to him, or his assignor, first judicially determined without the court having any jurisdiction of said debtor, and after such claim has been established, that it then be judicially determined what portion of the surplus is necessary for the support of herself and her children. Applying the principle announced in the foregoing authorities, it can readily be seen that this cannot be done, inasmuch as the court has no jurisdiction of the person of the debtor and the proceeding is not *in rem*, in which case judgment could be rendered against the property attached.

It follows from what has been said that the order appealed from must be reversed, with ten dollars costs and disbursements, and the motion to continue the injunction denied, with ten dollars costs.

VAN BRUNT, P. J., and RUMSEY, J., concurred; O'BRIEN and INGRAHAM, JJ., dissented.

VAN BRUNT, P. J. (concurring):

I concur in the opinion of Mr. Justice McLAUGHLIN, but in view of the dissenting opinion of Mr. Justice O'BRIEN, it seems to me that it may be proper to call attention, in greater detail, to the peculiar features of the authorities upon which he relies, and I think it will be seen that where language is quoted, a meaning has been

imputed to it which was far from the intention of the writer, and that isolated paragraphs are pressed into service without any consideration either of their context or of the subject in respect to which they were written. This is strikingly illustrated in the use attempted to be made of the case of *Hirshfeld* v. *Bopp* (145 N. Y. 84). That was an action brought by a creditor of the Madison Square Bank, an insolvent banking corporation organized under the banking laws of this State in the hands of a receiver, to enforce an alleged liability of the defendants, stockholders of said bank at the time of the appointment of the receiver, to the creditors of the corporation under section 52 of the Banking Law (Laws of 1892, chap. 689). The complaint alleged that the Madison Square Bank was a domestic banking corporation, but did not allege when it was organized. It alleged that on the 1st of August, 1893, the People commenced an action in the Supreme Court against the bank for its dissolution on the ground, among others, of insolvency, and that on November 24, 1893, judgment was entered thereon dissolving the corporation and forfeiting its corporate franchises and providing for the distribution of its assets among its creditors, *and restraining its several creditors from instituting any action against it,* and appointing a receiver, etc. The complaint further contained an allegation in respect to the amount of the capital stock, and then alleged that at the time of the commencement of the People's action and the rendition of the judgment, the defendants were stockholders, holding respectively the number of shares set forth in the complaint. There was no allegation as to the time when the several defendants became stockholders, or whether they were stockholders at or prior to the enactment of the Banking Law of 1892. It further alleged that prior to the commencement of the People's action, the plaintiff had deposited with the bank moneys belonging to him, for which the bank was indebted to him on that day, and that, although payment had often been requested of said bank, such payment had never been made. There was no allegation of the time when the deposit was made except that it was prior to the commencement of the People's action, nor of the terms of the deposit, whether special or otherwise, nor of the time when a cause of action against the bank accrued. It alleged that the assets in the hands of the receiver were wholly inadequate to pay the creditors of

the bank in full, and that, after the application of all the assets to the payment of the debts, there would remain a deficiency owing to creditors exceeding the sum of $500,000. The complaint then alleged that by reason of the premises the defendants had become individually liable to the plaintiff and the other creditors of the bank equally and ratably, and not one for the other, for all the contracts, debts, etc., of the corporation to the extent of the amount of stock held by them at the time of the commencement of the action at the par value thereof in pursuance of the provision of the statute in such case made and provided. It further alleged a request to the receivers to commence an action to enforce the liability of the stockholders and that they declined to do so and demanded judgment against the several stockholders. This complaint was demurred to by the defendants, and, amongst other grounds urged in support of the demurrer, it was claimed that the absence of any averment of the statutory requirement of the recovery of a judgment against the corporation for the debt and the return of an execution unsatisfied in whole or in part made the complaint fatally defective; and, although the demurrer was sustained upon other grounds, the court discussed the question whether that was an objection which necessarily precluded the plaintiff from recovering, and held that where the court had interposed and made it impossible for the plaintiff to comply with conditions precedent of judgment and execution returned unsatisfied, the creditor would be excused in a suit brought against the stockholders from the performance of such precedent conditions, notwithstanding the positive requirement of the law, and the learned chief judge of the Court of Appeals, with a charming confidence in the stability of judicial decision which an examination of the reports would not seem to justify, says: " The decision in *Hunting* v. *Blun* puts at rest the question."

It will be seen that the whole foundation of this virtual repeal of the statutory requirement was because the action of the court itself had made it impossible for the party seeking redress to comply with the conditions precedent required by the statute. The books may be searched in vain for any other class of cases which excuses a creditor seeking to reach equitable assets from first obtaining a judgment and return of execution unsatisfied or filing his bill in aid of

an outstanding execution except the cases of *National Tradesmen's Bank* v. *Wetmore* (124 N. Y. 241); *Patchen* v. *Rofkar* (12 App. Div. 475; 52 id. 367), to which attention will be hereafter called and possibly the case of *Lefevre* v. *Phillips* (81 Hun, 232), which cite the case of *National Tradesmen's Bank* v. *Wetmore* as their sole authority for the proposition there enunciated. Each of these cases claimed exemption from the ordinary rule respecting the procuring of a judgment and the return of an execution, because a court of equity had inherent jurisdiction in cases of fraud, which is not the case at bar.

The case of *Hunting* v. *Blun* (143 N. Y. 511) was an action under the General Manufacturing Act to enforce the liability imposed by the act upon the stockholders of an insolvent corporation, and it appearing that an action had been brought by a creditor of the corporation to sequestrate its property and for the appointment of a receiver, and that judgment had been rendered granting that relief, and forbidding creditors from suing the company or interfering with its assets, and that as this injunction, the act of the court, had rendered the performance of the condition precedent practically impossible, such fact excused the omission to obtain a judgment and issue an execution as required by the statute.

Similar to this was the adjudication in *Hardman* v. *Sage* (124 N. Y. 32) where by the same operation of law the creditor had been unable to comply with the statute, and that was held to be an excuse. The same view was intimated in the case of *Shellington* v. *Howland* (53 N. Y. 375), the whole basis of these adjudications being that, as the court had prevented the obtaining of the judgment and the issuing of the execution, the party seeking relief could not be held precluded by the terms of the statute. How these cases can be any authority for a deviation from the acknowledged rule, requiring a judgment and an execution returned unsatisfied as the foundation of equitable interference in favor of creditors against equitable assets, it seems difficult to imagine.

It is next necessary to consider the case of *National Tradesmen's Bank* v. *Wetmore* (124 N. Y. 241) which is the sole authority upon which all the subsequent cases cited depend, holding that in actions to reach equitable assets it is not necessary that the remedy at law should be exhausted. This was an action brought to set aside as

*fraudulent* a deed from Abner C. Wetmore through a third person to his wife, the defendant in the action, and for a sale of the land described therein in order to pay a debt due to the plaintiff from said Wetmore.    Objection was taken to the complaint upon the ground that it did not allege the recovery of a judgment and the return of an execution unsatisfied ; and the court held, citing certain authorities which will be examined hereafter, that courts of equity having inherent jurisdiction to reach assets which had been *fraudulently* transferred, the exhaustion of the remedy at law was not in such cases prerequisite, where some excuse was given for not having done so.    In the opinion it is recognized that it has become the settled rule in this State not to dispense with those preliminary proceedings at law (referring to the recovery of a judgment and the return of an execution), although it may be made to appear by evidence that no benefit could result to a creditor from them ; and the cases of *Estes* v. *Wilcox* (67 N. Y. 264) and *Adsit* v. *Butler* (87 id. 585) are cited. The learned judge then goes on to say : " This is not founded upon any purpose of the statute to repeal or curtail the common-law equity powers of the court, not inconsistent with the statute, to investigate the conduct of debtors in respect to their property in *fraud* of creditors, and to grant relief."    And that is the sole ground upon which the learned judge founded the right of the court to entertain jurisdiction in such a case.    He says : " The subjects of *fraud and trusts* are peculiarly matters of equity jurisdiction, which is very comprehensive where the other tribunals cannot afford relief, and its want of it is not to be inferred from the novelty of questions presented," citing the case of *Hadden* v. *Spader* (20 Johns. 564) as an authority for the above proposition.

In *Hadden* v. *Spader* the question before the court was whether, in a case where one John Davis, being largely indebted and being possessed of a large stock in trade and having debts due to him for a large amount, for the purpose of defrauding his creditors, combined with one Haddon to conceal the property so as to retain it for his own use, and delivered the same to Haddon, who still retained the same or the proceeds thereof, with a view of concealing or disposing thereof to prevent the same from being levied on by execution on any judgment which might be obtained against Davis, Haddon could be compelled to pay that money to the judg-

ment and execution creditors of Davis; and that was the case in which the language was used (quoting Mr. Maddock — 1 Madd. Ch. 8): "In cases of trust and fraud * * * courts of equity seem unwilling to set bounds to their jurisdiction and say how far they will go; evidently because fraud and trusts are peculiarly of chancery jurisdiction, and consequently its powers ought to be so exercised that no subtilty or cunning shall be able to prevent the detection of fraud or cause the failure of justice; that a trustee while acting fairly and honestly shall be sure of the protection of the court, but never be permitted to become the instrument of wrong." This case affords no foundation whatever for the doctrine which it was cited to support. It is perfectly apparent from this language that it was never intended to intimate that a court of equity had any jurisdiction in cases of trusts, except to enforce a trust or to grant some relief to parties who were beneficiaries of the trust; or in cases of fraud, except under the circumstances which existed in the case from which the language is quoted, namely — the case of a creditor who has obtained a judgment and an execution returned unsatisfied.

In *National Tradesmen's Bank* v. *Wetmore* the learned judge further says: "In some of the states the issue and return of execution preliminary to the action in equity is not required when it clearly appears that it would be utterly fruitless; and the same doctrine has been declared in the United States Supreme Court," citing the case of *Case* v. *Beauregard* (101 U. S. 690). Notwithstanding the fact that there was much discussion as to the rights of a creditor at large in that case, all that was decided was that whenever a creditor has a trust in his favor, or a lien upon property for a debt due to him, he may come into equity without exhausting his remedy at law. It further states (citing cases in other jurisdictions) that a creditor, without having first obtained a judgment at law, may come into a court of equity to set aside *fraudulent* conveyances of his debtor, made for the purpose of hindering and delaying creditors, and subject the property to the payment of the debt due to him — a rule which has never obtained in this State and had no authority to support it prior to the case of *National Tradesmen's Bank* v. *Wetmore* (*supra*).

Another case cited by the learned judge who wrote the opinion in *National Tradesmen's Bank* v. *Wetmore* is *M'Dermutt* v. *Strong*

(4 Johns. Ch. 687). There it was held that the Court of Chancery had power to assist a *judgment* creditor to discover and reach the property of a debtor which was beyond the reach of an execution at law; that to get possession of the equitable assets of the debtor as a resulting trust in goods and chattels, a judgment creditor must come into that court; and before a judgment creditor can be entitled to the aid of the court against goods and chattels of his debtor, or against any equitable interest of a debtor, he must first have taken out an execution at law and have caused it to be levied and returned, so as to show a failure of his remedy at law. This case does not seem to sustain the proposition in support of which it is cited.

In the case of *Wiggins* v. *Armstrong* (2 Johns. Ch. 144) it was held that a creditor at large, or before judgment, was not entitled to the interference of the Court of Chancery by injunction to prevent a debtor from disposing of his property in fraud of such creditor. The learned chancellor says: " This is the case of a creditor on simple contract, after an action commenced at law, and before judgment, seeking to control the disposition of the property of his debtor, under judgments and executions, upon the ground of fraud. My first impression was in favor of the plaintiffs; but upon examination of the cases, I am satisfied that a creditor at large, and before judgment and execution, cannot be entitled to the interference which has been granted in this case. In *Angell* v. *Draper* (1 Vern. 399) and *Shirley* v. *Watts* (3 Atk. 200) it was held that the creditor must have completed his title at law, by judgment and, execution, before he can question the disposition of the debtor's property; and in *Bennet* v. *Musgrave* (2 Ves. 51) and in a case before Lord NOTTINGHAM, cited in *Balch* v. *Wastall* (1 P. Wms. 445), the same doctrine was declared, and so it is understood by the elementary writers. (Mitford, 115, Cooper Equ. Pl. 149.) The reason of the rule seems to be that until the creditor has established his title, he has no right to interfere, and it would lead to an unnecessary, and perhaps, a fruitless and oppressive interruption of the exercise of the debtor's rights. Unless he has a certain claim upon the property of the debtor, he has no concern with his frauds."

The case of *Chautauque County Bank* v. *White* (6 N. Y. 236) is also cited as an authority, but it in fact established the contrary proposition. In that case it was a judgment creditor who was

seeking to enforce his rights, and in the discussion which arose upon the rights of this judgment creditor, the court, in reference to the provisions of 2 Revised Statutes, 174 (§§ 38, 39), say : " The common law powers of the court in reference to fraudulent trusts and conveyances are not touched by these provisions. Fraud and trust were familiar heads of equity jurisdiction, independent of the statute. The creditor invoking the aid of the court must establish his title to its interposition by alleging a lien or *quasi* lien upon the real or personal property which was the subject of the trust; and he would then be entitled to relief, notwithstanding he had a remedy at law, by levy and sale upon execution. In all cases of fraudulent trusts the court may, in its discretion, direct a sale by a master and compel the debtor and trustee to unite in the conveyance to the purchaser," etc. It is a familiar branch of equitable jurisprudence that where there is a lien it may be enforced in equity, and all that was said in respect to a creditor not exhausting his remedy at law by levy and sale upon execution depended upon the existence of a lien which he had a right to enforce in equity.

The case of *Patchen* v. *Rofkar* rests entirely upon the authority of *National Tradesmen's Bank* v. *Wetmore,* and, as already stated, even those cases only claim that the prerequisites of a judgment and execution returned unsatisfied do not apply to a case where equitable interference is asked for upon the ground of fraud perpetrated upon the creditor.

Mr. Justice O'BRIEN, in referring to the case of *Russell* v. *Clark* (7 Cranch, 89), quotes certain language as supporting the contention of the respondent in this case. The language is : " If a claim is to be satisfied out of a fund which is accessible only by the aid of a Court of Chancery, application may be made in the first instance to that court, which will not require that the claim should be first established in a court of law." It is perfectly apparent that this language refers to a case where a fund has been created for the purpose of satisfying the claim, to enforce which the intervention of the Court of Chancery is sought, and that was the question which was being considered by the court in *Russell* v. *Clark.*

It is thus seen how inapplicable the authorities cited in *National Tradesmen's Bank* v. *Wetmore* and *Patchen* v. *Rofkar* are to sustain even the limited proposition laid down in those cases.

The cases are — I had almost said innumerable — which hold that in no case can a creditor reach property not liable to be levied upon by execution in an action in equity unless he is a judgment creditor with an execution returned unsatisfied, or files his bill in aid of an outstanding execution. In addition to the cases to which attention has heretofore been called, we might cite *McElwain* v. *Willis* (9 Wend. 549), in which it is held that, to entitle a judgment creditor at law to the aid of a court of chancery to obtain satisfaction of his judgment against the defendant out of property not liable to be levied upon by execution, he must show not only an execution issued, but returned *nulla bona,* and no state of facts will excuse such return, and that a bill in chancery may be filed to remove a fraudulent or inequitable obstruction or embarrassment to the satisfaction of a judgment by execution, but the bill in such case must distinctly and specifically allege that there is real estate which is subject to the judgment, or personal property liable to the execution.

In *Allyn* v. *Thurston* (53 N. Y. 622) and *Estes* v. *Wilcox* (67 id. 264) it was held that a creditor at large could not maintain an action to enforce a resulting trust in land purchased and paid for by his debtor and by his direction conveyed to another person.

In the case of *Adee* v. *Bigler* (81 N. Y. 349) it was held that to entitle a creditor to the aid of a court of equity in reaching assets there must be a judgment, an execution issued thereon, and a return thereof unsatisfied ; and the fact that the debtor is an insolvent corporation and has conveyed its property in contravention of the statute does not authorize a resort to equity until the remedy at law has been thus exhausted. Nor can an equitable action be upheld on the ground that the appointment of a receiver is necessary to preserve the property from misappropriation and waste pending the litigation. In that case there was a demurrer to the plaintiff's complaint which was to set aside a conveyance fraudulently made by the corporation in contravention of the statute, and the demurrer was sustained because the complaint did not contain an allegation in regard to the obtaining of a judgment and the return of an execution unsatisfied.

In *Adsit* v. *Butler* (87 N. Y. 585) it was held that in an action by a judgment creditor to set aside on the ground of fraud a con-

veyance of real estate by the debtor, the complaint must allege the issuing of an execution upon the judgment; that the return of an execution unsatisfied is essential to give the court jurisdiction, or the action must be brought in aid of an execution then outstanding; and that allegations that the debtor is dead, and from the time of the rendition of the judgment was wholly insolvent, are not sufficient. This was another case of a demurrer to the complaint, and the demurrer, therefore, admitted the fact of insolvency and the rendition of the judgment, and that the debtor was dead and that plaintiff could not issue an execution; and yet it was held that because he had not an execution either outstanding or returned unsatisfied, his complaint was defective, although he sought relief upon the ground of fraud.

The same principle is enunciated in the case of *Carpenter* v. *Osborn* (102 N. Y. 553), where it was held that although the court, having acquired jurisdiction in regard to other matters, had authority to render money judgments for certain amounts which were not already in judgment, the rule which precludes a court of equity from entertaining jurisdiction of an action to set aside a fraudulent conveyance at the suit of a simple contract creditor had rendered the judgment erroneous so far as it declared such debt a lien upon the property.

And if later authorities than these are necessary, we might refer to the case of *Prentiss* v. *Bowden* (145 N. Y. 345). That was an action brought by a judgment creditor in his own behalf simply, to set aside a conveyance of land made by his debtor on the ground that it was made in fraud of creditors; and the court distinctly held that the plaintiff must show that he has exhausted his remedy at law against the debtor by the issue and return of an execution unsatisfied in whole or in part.

Thus it is seen that in cases even where the intervention of a court of equity is sought upon the ground of fraud, it has been held over and over and over again that it is a prerequisite that the plaintiff should show that he was a judgment creditor and had an execution either outstanding or returned unsatisfied. The situation of the plaintiff in the case at bar is certainly not so favorable to the obtaining of jurisdiction as that of the plaintiff in the case of *Prentiss* v. *Bowden*, who was seeking to recover his own debt

and to reach equitable assets as a general creditor, and yet it was held that, although a man under such circumstances might have obtained a judgment, if he had not issued his execution he could not get relief. This case is conclusive upon the question that a creditor seeking relief upon his own behalf against a fraudulent transfer by his debtor, must be a judgment creditor with an execution returned unsatisfied or outstanding, the case of *National Tradesmen's Bank* v. *Wetmore* not being overlooked in the making of that decision. It is decisive of the question involved in the case at bar.

There seems to be another objection which in an action like the present is fatal to the right of the plaintiff to maintain the same, and that is the constitutional right of certain of the defendants to a trial by jury as to the validity of the claim which has been presented against them and for the payment of which property to which they are entitled is to be appropriated. In an action in equity a defendant cannot claim a trial by jury as matter of right upon any issues except such as are directed by positive statutes to be thus tried. It is because of this direction in the statute prior to the adoption of the Constitution in 1821, that the right to a trial by jury of the issue of adultery in an action for divorce became fixed. When actions of this kind were tried in the ecclesiastical courts all the issues were tried without a jury. When the Court of Chancery was given jurisdiction to try actions for divorce upon the ground of adultery, there was a positive enactment that the chancellor should frame a feigned issue upon the question of adultery and have the same submitted to a jury. And this was the condition of the law at the time of the adoption of the Constitution of 1821, which provided (Art. 7, § 2) that "trial by jury in all cases in which it has been heretofore used shall remain inviolate forever," and as this language has been continued substantially in all subsequent Constitutions, the right to trial by jury has necessarily been maintained. The act under which it is sought to charge certain of these defendants in this action came into existence in 1828, and the Legislature was powerless, after the adoption of the Constitution of 1821, if it attempted so to do, to give a court of equity jurisdiction to determine a question of indebtedness between the parties, unless as an adjunct to some branch of equity jurisprudence which had been in existence at the

time of the adoption of this Constitution. The right of a court of equity to interfere in cases like the one at bar was first created in 1828, as above stated. Consequently, for the purpose of the establishment of the debt, certain of these defendants have a constitutional right to a trial by jury.

This has been expressly held by the United States Supreme Court in the case of *Gates* v. *Allen* (149 U. S. 451). In that case the question presented was whether an action could be maintained by a general creditor to set aside a fraudulent conveyance. The action was originally brought in the District Court of the United States for the northern district of Mississippi. It was based upon a statute of that State which provided in express terms that a creditor could maintain an action to set aside the conveyance of his debtor without having first obtained a judgment or issued an execution, and the plaintiff upon the trial in the United States court claimed to stand upon the rights given by that statute. In the District Court the plaintiff succeeded, but upon appeal to the Supreme Court of the United States the judgment was reversed solely upon the ground that by the Constitution of the United States the debtor was entitled to a trial by jury of the action against him to recover the amount of his debt, and that until he had had an opportunity in that way to contest the amount of his liability, no action could be maintained against him to set aside the conveyance or for any other relief.

It may be said in answer to this proposition that then in all cases under our lien law a party is entitled to a trial by jury as to the question of the amount which may be due, but it is to be borne in mind that courts of equity have always had jurisdiction of the question of liens and their enforcement, and a lien is nothing more than a statutory mortgage. This was a class of jurisdiction which courts of equity have exercised since their institution. But the jurisdiction which was conferred upon courts of equity by the act under which the plaintiff in this action is seeking to enforce his claim was a new jurisdiction, unheard of prior to the passage of the act of 1828.

In the dissenting opinion it is said that if this view is sound, it would equally apply to every suit brought by attachment which resulted in a judgment after the publication of summons against

non-resident defendants. The learned justice in making this illustration forgot that the action in which an attachment is issued and which results in a judgment is an action at law, which the defendant may come in and defend and have his defense passed upon by a jury as a matter of right. In the case at bar no such right exists upon the part of any of these defendants.

I concur, therefore, with Mr. Justice McLaughlin that the order should be reversed.

O'Brien, J. (dissenting):

It is unnecessary to discuss the numerous objections urged by the appellants, and I shall confine myself to the only one deemed worthy of attention by the majority of the court, namely, that the failure to obtain a judgment and issue an execution is fatal to the action.

This I do not regard as an open question either in this court or in the Court of Appeals. It has been twice before us in *Patchen* v. *Rofkar* (12 App. Div. 475; 52 id. 367), and before the Court of Appeals in *National Tradesmen's Bank* v. *Wetmore* (124 N. Y. 241). In the latter case, in referring to the necessity in all creditors' actions of obtaining a judgment and issuing execution, it was said: "It has become the settled rule in this state not to dispense with those preliminary proceedings at law, although it may be made to appear by evidence that no benefit could result to the creditor from them. (*Estes* v. *Wilcox*, 67 N. Y. 264; *Adsit* v. *Butler*, 87 id. 585.) This is not founded upon any purpose of the statute to repeal or curtail the common-law equity powers of the court, not inconsistent with the statute, to investigate the conduct of debtors in respect to their property in fraud of creditors, and to grant relief. The statute did not purport to do that, but provided that 'the powers and jurisdiction of the Court of Chancery are co-extensive with the powers and jurisdiction of the Court of Chancery in England, with the exceptions, additions and limitations created and imposed by the Constitution and laws of this state.' (2 R. S. 173, § 36.) In some of the states the issue and return of execution preliminary to the action in equity is not required when it clearly appears that it would be utterly fruitless; and the same doctrine has been declared in the United States Supreme Court. (*Case* v. *Beauregard*, 101 U. S. 690.) The rule in

this state, in some sense limiting the exercise of jurisdiction of the court so as to bring within its application all cases having in their purpose or relief sought, the nature of statutory creditor's bills does not necessarily rest upon a want of equitable power of the court or its denial, but rather is adopted as a rule governing and regulating the exercise by the court of jurisdiction within its equitable powers. It has the merit of uniformity, and in effect relieves a case from any uncertainty as to what would have resulted from the use of an execution if one had been issued. And it is founded upon the doctrine that a court of equity will not take cognizance of a controversy which can be determined at law, and not until the remedy there is exhausted. Such has quite uniformly been the rule of the common law applicable to equitable jurisdictions. (*M'Dermutt* v. *Strong,* 4 John. Ch. 687; *Hadden* v. *Spader,* 20 John. 554.) But this rule is not so unrelenting as to deny to a party the interposition of the equity powers of the court when the situation is such as to render impossible the aid of a court of law to there take the preliminary steps and produce what ordinarily may be treated as the condition precedent to the application for equitable relief."

The rule thus enunciated has been followed not only in this court in the case referred to, but also in the General Term, fifth department, in *Lefevre* v. *Phillips* (81 Hun, 232). It is here sought, however, to destroy the force and binding effect of these decisions by a suggested distinction between actions where a court of equity has inherent jurisdiction and where its jurisdiction is statutory. If I am right in the view that this supposed distinction is more imaginary than real, then the cases cited should be followed. The sections of the Code of Civil Procedure (1871–1879) make no such distinction, but are applicable alike to all creditors' actions; and if these conditions precedent as to judgment and execution are essential in any form of creditor's action, then, clearly, they are essential in all. It is conceded that they are applicable to creditors' actions in which a court of equity has so-called inherent power; and yet, as we have seen, the court has assumed jurisdiction where these conditions precedent, from the nature of the case, could not be complied with by reason of the non-residence of the debtor or other cause. It is true that the right to reach surplus income in an equitable action

is derived from statute, but in the very statute conferring the juris-
diction it is said (1 R. S. 729, § 57) that the surplus "shall be liable
in equity to the claims of the creditors of such person in the same
manner as other personal property which cannot be reached by an
execution at law."

Thus it appears that the formal procedure and the manner of exer-
cising the equity powers of the court to reach surplus income are
assimilated to other creditors' actions. Except that it is provided
that the power shall be exercised in the same manner as in other
creditors' actions, there is no express provision that it shall be exer-
cised pursuant to the provisions of the Code of Civil Procedure
(§§ 1871-1879). Because of the requirement, however, as to the
manner of its exercise, the court would proceed — as it would do if
there were no such requirement — in the same manner as in any
other creditor's action in equity. What has been done by statute is
to bring a new subject into equity ; and with respect to the proced-
ure to be followed or the manner in which the court should exercise
its jurisdiction over such new subject, there can be no real or sub-
stantial distinction between such and other actions in equity. In
the statute conferring the additional jurisdiction there is nothing
which at all limits the manner of its exercise, except that, as has
been stated, the manner, form and procedure have been assimilated
to other creditors' actions. It seems to me, therefore, to be a fanci-
ful distinction to say that in one class of cases wherein the court has
so-called inherent power it can dispense with these conditions prece-
dent, while with reference to reaching surplus income, which by
statute has been brought into equity, the power of the court has by
some undefined and necromantic principle been mysteriously
eliminated.

The authorities, as I read them, are against any such supposed
distinction. As said in *Russell* v. *Clark* (7 Cranch, 89) : "If a
claim is to be satisfied out of a fund which is accessible only by the
aid of a Court of Chancery, application may be made in the first
instance to that court, which will not require that the claim should
be first established in a court of law." *Hirshfeld* v. *Bopp* (145 N.
Y. 84) was an action by a creditor of a domestic banking corpora-
tion seeking to charge a stockholder under a statute which, as pre-
requisites, required the recovery of a judgment against the corpora-

tion and the return of an execution thereon unsatisfied. This clearly was a so-called statutory action. As said in the syllabus, "*It seems*, that when an action has been brought by the People against such a corporation, and a judgment has been rendered therein dissolving it, sequestrating its property, appointing a receiver and restraining creditors from bringing suit against it, this is an excuse for the nonperformance of the condition precedent requiring a judgment against the corporation and the return of an execution unsatisfied." The very distinction here sought to be made was thus referred to in the opinion: "On the other side it is insisted that the liability of stockholders being purely statutory, performance is a necessary condition, without which no action can be maintained, and that no disability to sue the corporation, whether arising from the act of the law or from any other cause, can excuse its performance." And in disposing of this contention, Judge ANDREWS reviews the decisions, and after concluding that the case of *Hunting* v. *Blun* (143 N. Y. 511) put the question at rest in that court, continues: "If it was necessary to find reasons supporting this decision, they are obvious " — and then he proceeds to give them.

The further contention is made that a judgment entered after personal service upon the trustees only and service by publication on the defendants Castellane is open to constitutional objections, as depriving the latter of their property without due process of law. But this, if sound, would apply equally to actions whether the jurisdiction was inherent or conferred by statute, and equally applicable would it be to every suit brought by attachment which resulted in a judgment after publication of summons against non-resident defendants. The theory in attaching is that it is a proceeding *in rem*, just as this action, directed against the surplus of the trust fund, is in the nature of an equitable action *in rem*. Here, if the trustees had held an accumulated income, the plaintiff could have begun an action at law without reducing his claim to judgment or urging any excuse for not having done so. In such action he would have attached the accumulated fund and published the summons against non-resident defendants, and after judgment the fund could have been seized and applied to the satisfaction of the judgment.

Further discussion of these contentions I deem unnecessary, because they have been disposed of in numberless decisions, and

particularly in the case in this court to which I have already referred (*Patchen* v. *Rofkar*, 12 App. Div. 476), wherein the reasons why a court of equity may dispense with the conditions precedent are fully stated in the following language : " It is apparent that the plaintiff could in no way secure a judgment in this State. * * * Moreover, a judgment recovered against the assignor (defendant) in another State where jurisdiction could be obtained of his person, would have no other validity in this State than a simple contract claim, and would no more constitute a basis for the ordinary creditors' action here than the general indebtedness itself. * * * It thus appears conclusively that it is true, as alleged in the complaint, that the plaintiff has no remedy at law which he can pursue or exhaust, and that, unless he can maintain this action in equity, he must lose his total indebtedness."

For the reason, therefore, that I do not regard the question as an open one, I dissent from the conclusion reached by the majority of the court, and think that the order continuing the injunction should be affirmed, with costs.

INGRAHAM, J., concurred.

INGRAHAM, J. (dissenting):

I concur with Mr. Justice O'BRIEN. If we were authorized to overrule *National Tradesmen's Bank* v. *Wetmore* (124 N. Y. 241) the considerations advanced in favor of reversing this order would have weight ; but as we are bound to apply a case, I can see no escape from the conclusion that the court has the right to grant relief in this action without requiring that the remedy at law should be exhausted. The ground of that decision is that " the subjects of *fraud and trusts* are peculiarly matters of equity jurisdiction, which is very comprehensive where the other tribunals cannot afford relief." In that case it was the fraudulent disposition of property that gave the court jurisdiction. In this case I think it is the trust under which the property is sought to be applied to the payment of the plaintiff's claim which gives the court jurisdiction.

The income from this trust fund which the statute makes applicable to the payment of the debts of the person entitled to such income can only be reached upon application to a court of equity. A court of law would have no jurisdiction to compel the trustee to

apply any portion of such income to any purpose; and it is the inability of a court of law to reach property held in trust that gives a court of equity its comprehensive jurisdiction over trusts. An action to reach the income of this property could not be maintained under the Code of Civil Procedure, as by section 1879 the provisions in relation to creditors' actions are expressly held inapplicable to actions to reach property held in trust, when the trust was created by a person other than the debtor.

If the debtor is entitled to a trial by jury as to the validity of the claim against her, she can have such a trial in this action. She is a party to the action and can appear and dispute the plaintiff's demand, and the court can send the issues as to the validity of such demand to be tried by a jury. Such a case is expressly provided for by section 970 of the Code of Civil Procedure.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.